BLAIR v. BLACK.

ELIAS v. SAME.

1. Partnership creditors, after exhausting partnership assets, are entitled,
as to any balance remaining due, to share equally and ratably with
the individual creditors in the individual assets.

2. An assignment for the benefit of creditors which directs that individ-
ual assets shall first be paid to the individual creditors, and that part-
nership creditors shall receive out of such assets only the surplus re-
maining after such payment, gives to the individual creditors a prefer-
ence not allowed by law, and is therefore void.

Before KERSHAW, J., York, July, 1888.

These were two actions instituted in May and June of 1887,
by creditors of Black, Carpenter & Davies against John G. Black,
assignee, and the assignors, to set aside deeds of assignment. The
opinion states the facts. The Circuit decree, omitting its state-
ment of the case and its rulings upon points not considered, was
as follows:

The object sought by the action is to set aside the assignment
and subject the property to the payment of claims of creditors.
The first and chief objection to the assignment is that it gives
undue preference to individual over copartnership creditors. The
legal proposition involved under this head is well stated by one
of the counsel for plaintiffs thus: "Whether it is the recognized
law of South Carolina that partnership creditors are first entitled

to be paid out of firm assets, and individual creditors out of individual assets." It is conceded that if this is the law, this objection fails. The first branch of the proposition is not denied, but it is contended that individual creditors are not first entitled to be paid out of the individual property, but have only an equity to require that partnership creditors be first compelled to exhaust the assets of the firm, and after that is applied, they are then entitled as to any balance due them to share equally and ratably with the individual creditors in the individual assets.

Chancellor Kent states the general rule thus: "The joint creditors have the primary claim upon the joint fund in the distribution of the assets of bankrupt or insolvent partners, and the partnership debts are to be settled before any division of the funds takes place; * * * and the separate creditors are only entitled to equity to seek payment from the surplus of the joint fund after the satisfaction of the joint debts. The equity of the rule, on the other hand, equally requires that the joint creditors should only look to the surplus of the separate estates of the partners, after the payment of the separate debts." 3 *Com.*, 64. He adds that this was an acknowledged principle of the Roman law, and had been acknowledged in the equity jurisprudence of Spain, England, and the United States. Judge Story says of this rule that "the creditors of the partnership have the preference to have their debts paid out of partnership funds before the private creditors of either of the partners. * * * On the other hand, the separate creditors of each partner are entitled to be first paid out of the separate effects of their debtor before the partnership creditors can claim anything." He adds, "This can only be accomplished by the aid of a Court of Equity; for at law a joint creditor may proceed directly against the separate estate." He refers to a great number of decisions, English and American, sustaining this doctrine. 2 *Story Eq.*, 675.

In our own case of *Woddrop* v. *Price*, 3 DeS., 207, it is said: "It has been settled by repeated decisions of this court, that the private estate is principally liable to the private creditors, and the copartnership effects to the copartnership creditors." This was the recognized rule here until the case of *Wardlaw* v. *Gray* was decided in 1837, as it is still the rule in England and the

United States, with few exceptions, and in the United States Courts in Equity and Bankruptcy. The history of the rule is given briefly in the case of *Murrill* v. *Neill* (8 Howard, 426), by Judge Daniel, in the decree of the court. He says: "This rule may be traced back in England with certainty to the cases of *Ex parte Crowder* (in 2 Vernon, 706), and of *Ex parte Cook* (2 P. Wms., 500), nearly a century and a half since. It was affirmed by Lord Hardwicke in *Ex parte Hunter* (1st Atkyns, 228, in 1742), and continued unchanged until 1785, when a material innovation was made upon it by Lord Thurlow, in the case of *Ex parte Hodgson*, 2 Br. Ch. Rep., 5. By the decision last mentioned, the established practice then of sixty years was so changed, and the distinction between joint and separate creditors so broken up, that the former were permitted to come in, and to receive dividends *pari passu* with the latter from the separate estate."

This change of rule was only in the distribution of the effects of a bankrupt, and to avoid the supposed injustice and inconvenience of it, the practice was adopted of filing a bill in behalf of the separate creditors, to restrain the order in bankruptcy, and "by this means the rights of the joint and separate creditors on their respective funds were maintained." Speaking of the rule of Lord Thurlow, Lord Loughborough said: "The difficulty that has struck me upon it is, that what I order here sitting in bankruptcy, I shall forbid to-morrow sitting in chancery; for it is equity, of course, to stay the dividend on bill filed. The plain rule of distribution is, that each estate shall bear its own debts. The equity is so plain that it is quite of course upon a bill filed. I have no difficulty in ordering these to be permitted to prove, but not to receive a dividend." Such is the rule in bankruptcy in England to-day.

Judge Daniel states his conclusions in these words: "The proper conclusion from these authorities we deem to be this, as stated by Judge Story, in his treatise on partnership (sec. 376), where he says, 'It is a general rule that the joint debts are primarily payable out of the joint effects, and are entitled to a preference over separate debts of the bankrupt; and so, in the converse case, the separate debts are primarily payable out of the

separate effects, and possess a like preference; and the surplus only, after satisfying such priorities, can be reached by the other class of creditors."

Let us now see how it came about that the courts of South Carolina departed, or seemed to depart, from a rule so universal and so long established, approved by the most eminent of jurists and judges in England and America, as in *Wardlaw* v. *Gray*, Dudley, 113. Chancellor Johnston delivered the Circuit decree in that case, resting it upon the ground (p. 94) that "the rule does not apply when the partnership, as in this case, is utterly insolvent." Only two cases are referred to, that of *Burn* v. *Burn* (3 Ves., 573), and *Ex parte Elton* (*Ibid.*, 238), which will presently be commented on. This decision on Circuit was sustained by the Court of Appeals, Chancellor Johnston delivering the opinion. He says, speaking of the creditors: "At law, their remedy is only against the survivor, Holmes. But whenever the deceased (partner) has participated in the consideration of the debt (as all partners do), if the survivor is insolvent, equity always affords relief." P. 114.

In the case of *Murrill* v. *Neill*, above cited, Judge Daniel says (page 427): "It may be proper in this place to mention the two departures permitted by the Court of Chancery in England from the general rule framed by that court. * * * The *first* is presented in the instance in which the petitioning creditor, though a joint creditor, is permitted to charge the separate effects *pari passu* with the separate creditors, because, as it is said, his petition, being prior in time, is in the nature of an execution in behalf of himself and the separate creditors; and the *second* is that in which there are no joint effects at all. In the last instance it is said that the joint creditors may come in for dividends, *pari passu* on the separate effects, though if there be joint effects, though of the smallest possible amount, this privilege would not be allowed. These exceptions it seems difficult to reconcile with the reason or equity on which the general rule is founded. They are exceptions, however, and cannot impair the rule." He adds that they do not appear to have been recognized in this country, and refers to the case of *McCulloh* v. *Dashiell* (1 Harr. & G., 96), as repudiating the principle contained in the latter excep-

tion.   So it is manifest if this exception to the general rule may
be considered as law here, it only applies to the case where there
is "*no joint estate* at all."

The case of *Burr* v. *Burn*, which is cited as a case in point,
as authority for the decision in *Wardlaw* v. *Gray*, does not ap-
pear to have been closely examined by the learned and venerable
chancellor delivering the decree on Circuit.   It was not the case
of a partnership debt.   Thomas Mayne, Edward Mayne, the
elder, and Edward Mayne, the younger, were merchants carry-
ing on business under the name of Mayne & Co.   They owed Dr.
Burn 25,244£ 18s. 7d. on a balance of account.   Edward Mayne
settled the account, and Dr. Burn pressed for security or pay-
ment.   Edward Mayne, the elder, proposed that he and the other
members of the firm should give. three bonds, which should bind
them severally.   The bonds were executed as an additional secu-
rity, but were only signed by Thomas Mayne, but in the presence
and with the privity of the other partners, using the name of the
firm.   Under these circumstances, and on the ground of mistake,
and to carry out the intention of the parties, the court allowed
the bonds to be set up as several bonds and specialty debts in the
administration of the estate of Edward Mayne, the elder.   The
whole case recognizes the doctrine that it was only by showing
that it was intended to bind the partners individually, that it
would be allowed to come in as a specialty debt of the deceased
partner.   Certainly, therefore, it cannot be claimed to support
the doctrine that the joint debts of a firm are entitled to share in
the personal assets with the separate creditors, in violation of the
well established rule to the contrary.

The other case cited in *Wardlaw* v. *Gray* as authority is that
of *Ex parte Elton*, 3 Ves., 238.   Chancellor Johnston says of
that case: "The creditor of a partnership was permitted to prove
a demand under a commission of bankruptcy against one of the
partners, but not to receive a dividend until an account was taken,
and the amount he might receive from the partnership funds were
first ascertained; evidently proceeding on the principle, that if
the partnership funds proved insufficient, he was entitled to par-
ticipate with the separate creditors of the bankrupt." (Dudley
Eq., p. 94.)   It is difficult to account for the court's falling into

so great an error in regard to that case. It is a leading authority for the support of the rule. It is there expressly decided, "that the joint estate is applicable to partnership debts, the separate estate to separate debts," upon general equity. The object in allowing the joint creditor to prove his demand against the separate estate, but not to receive a dividend until an account be had of the joint estate, is not in order to enable the creditor, after applying the joint assets to his debt, "to participate with the separate creditors of the bankrupt," as supposed by the court, but may be learned from the decree in the case cited to be quite the reverse. It is there said (3 Ves., 241): "Whenever my order will procure an account of the joint estate, there can be no harm; for then I should give the usual directions to apply the funds respectively—*the joint estate to the joint debts, the separate estate to the separate debts; the surplus of each to come in reciprocally to the creditors remaining upon the other.*" Certainly, language could not be plainer.

It is clear, then, that this case was certainly misconceived in *Wardlaw* v. *Gray*, and that case, consequently, remains without a single authority to sustain it, standing against a long established and well settled rule supported by a vast array of cases. See *Sumner's Notes* to 3 Ves., 242. The consequences of this misconception have been rather serious.

In *Fleming* v. *Billings & Belk*, Chancellor Johnston adjudged that "the partnership creditors are first entitled to be paid out of the proceeds considered to be partnership funds; and if that is insufficient to pay them, then they are to come in with the private creditors (respect being had to liens) as against the proceeds regarded as private property." This is not supported by any reason given or authority cited, and there was no question on this point on the appeal. It stands merely as a Circuit decree acquiesced in. 9 Rich. Eq., 152.

In *Gadsden* v. *Carson* (9 Rich. Eq., 252), Chancellor Dargan, in the Circuit decree, administering a fund which the court held for that purpose, after setting aside a deed of assignment made by one of the members of a copartnership, adjudged that the individual estate was subject to pay the demands of the individual or private creditors of Carson; and so much of the securi-

ties, choses, and assets and property as belonged to the firm, were subject to pay the copartnership debts respectively. This was in exact accordance with the rule of equity generally prevailing. From this part of the decree there was no appeal, but the case going up on other grounds, Chancellor Johnston, delivering the decree of the Court of Appeals, modified this part of the Circuit decision, and announced the rule to be, that "the private creditor, who has only one fund to resort to, has an equity to compel the partnership creditor, who has two, to resort to the partnership assets until he exhausts them. But after this is done, the partnership creditor has as good a right to be paid any balance still remaining unsatisfied, out of the private property of the partner, as any other of his individual creditors." This, he says, is in accordance with the case of *Wardlaw* v. *Gray.* This introduced an entirely new rule for the administration of such estates, without discussion and without the citation of authority, except such as may be found in *Wardlaw* v. *Gray*, and declared on an appeal which did not make the point.

In *Wilson* v. *McConnell* (9 Rich. Eq., 510), Ch. Dunkin followed the decision in *Gadsden* v. *Carson,* saying the matter was fully considered in that case, and quotes what was then said, stating the rule as above, but without other reference or reasoning. On appeal this judgment was sustained, and it is said by Ch. Johnston in the decree, that "the doctrine is well established in this State, that in a conflict between copartnership creditors and private creditors of one of the copartners, the private creditors have the right to compel copartnership creditors to exhaust the joint assets before seeking a remedy out of the individual estate of the partners." Of this there can be no doubt; but while applying the rule, as supposed to be established in *Wardlaw* v. *Gray* and *Gadsden* v. *Carson,* we are furnished with neither reason nor authority for it.

In *Roberts* v. *Roberts* (8 Rich., 15), there were two judgments and executions of the same date entered, one against A. B. and the other against A. B. & C. D., copartners. Land of A. B. was sold, and other property belonging to him individually. Held, that the proceeds should be applied to the separate execution. This was a case in the law court, and came up on a rule

on the sheriff; nevertheless, the court applied the equity principle.

This was adjudged error in the case of *Kuhne* v. *Law* (14 Rich., 18), which was also a contest upon a rule on the sheriff as to the application of the money. There was a senior judgment and execution on a copartnership debt, and a junior judgment against the individual member whose property had been sold. The court held that the money must be paid to the senior judgment. It could not have been otherwise, because the equities could not be considered in that proceeding, which was one wholly of legal consideration, the only question being as to the validity of the lien of the partnership creditor. The court decided nothing on the question here considered, and it was left open by the Court of Errors, because it was not then before the court, and it was declared to be unsettled, as it seemed, owing to the conflict of authorities in this State, whether separate effects are first to be applied to separate debts. The learned and judicious reporter has added a note to that case, and reported there the case of *Sniffer* v. *Adm'rs of Sass*, where it is declared to have been "the settled law of this State, since the year 1797, that the separate creditors of a member of a firm are entitled to be paid out of his separate estate in preference to the creditors of the firm."

That the rule was still open for consideration, was recognized by Associate Justice McIver in the recent case of *Adickes* v. *Lowry*, 15 S. C., 128. It still remains open, for in the latest case of *Hutzler* v. *Phillips* (26 S. C., 150), where the Chief Justice, delivering the opinion of the court, decided that "copartnership creditors, after exhausting copartnership assets, had the right to share the separate assets *pro rata*, with the individual creditors"; both the Associate Justices, while concurring in the result of the case, reserved their opinions upon all the questions involved expressly. Here, it seems to me, that the authorities of *Wardlaw* v. *Gray*, and the cases following on the same line, together with a failure to consider the distinction between cases decided upon equitable principles and those purely legal in their character, may be supposed to have led to the conclusions reached by the Chief Justice quite naturally.

It having been shown that the question is still open, and,

24—31

furthermore, that the departure from this settled rule of adminis-
tration of partnership assets, where there are individual claims
and individual property, is wholly founded upon the case of
*Wardlaw* v. *Gray,* and *that* wholly upon a total misconception
of the English cases cited to support it, with great deference to
the opinions of the eminent jurists whose decisions are here re-
viewed, I am impelled to the conclusion, that, in the case under
consideration, the individual property is first applicable to the
individual debts, and that the provisions upon that subject in the
assignment are in strict conformity to the established rule, and,
therefore, constitute no improper preference.

From this decree the plaintiff appealed.

*Messrs. W. B. McCaw* and *C. E. Spencer,* for appellants.

*Messrs. Hart & Hart,* contra.

July 16, 1889. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On January 29, 1889, James W.
Black and Jacob K. Carpenter, of the old mercantile firm of
Black & Carpenter, and also of its successor, Black, Carpenter &
Davies, made an assignment of both their individual and partner-
ship property, for the payment of their debts, to John G. Black
as assignee and trustee. J. L. Davies, one of the latter firm, did
not sign the original deed of assignment, being absent at the time
it was executed, but ratified it some days later, and, indeed, exe-
cuted another deed, conforming substantially to the first. The
assignment provided that the property and assets of the individual
members of the respective firms should be first applied to the
payment of the individual debts of the members of the firm; and
that the property and assets of the firms respectively should be
first applied to the debts of the partnership; and that if a surplus
should remain after paying the debts of the one class, then such
surplus should be paid to debts of the other class, and so recipro-
cally of the other class. The assignment also provided, that if
there should not be sufficient funds to pay the debts, the assignee
should pay them ratably, or such as should, within thirty days

from the date of the assignment, agree to accept the terms of it, and to release the parties from all liability on their debts and claims, &c.

The cases stated above were instituted by creditors of the respective firms for the purpose of setting aside the deed of assignment, and, being identical in object and purpose, were consolidated and heard together. Several grounds were urged, sufficient, as alleged, to set aside the assignment and subject the property to the claim of creditors according to law, but, from the view which the court takes, it will not be necessary to consider any of the objections, except the one chiefly relied on by the assailing creditors, viz., that, in violation of section 2014 of the General Statutes, which denounces assignments giving preferences as "absolutely void," this assignment gives undue and illegal preference to individual over copartnership creditors, in excluding the partnership creditors (after exhausting the partnership assets) from coming in and participating with the individual creditors in the individual property of the members of the different firms; the proposition relied on being, that, under the law of this State, the individual creditors are not entitled to be paid first out of the individual property, but have only an equity to require that the partnership creditors should exhaust the assets of the firm, and after that is applied, they are then entitled, as to any balance due them, to share equally and ratably with the individual creditors in the individual assets. While, on the other hand, in support of the assignment, it is urged that the rule is, that the joint debts are primarily payable out of the joint effects, and are entitled to a preference over separate debts; and so, in the converse case, the separate debts are primarily payable out of the separate effects, and, as to that, possess a like preference; and the surplus only, after satisfying such priorities, can be reached by the other class of creditors. So that really the only question involved is one purely of law. What was the law of this State upon the subject when the assignment was executed?

The cause came on to be heard by Judge Kershaw, who, making a full and interesting review of the authorities, both in the English and American courts, in law and in equity, held that the question as to the priority of the individual over the partnership

creditors in the individual property of the members of the firm, was still an open question in this State, and, "furthermore, that the departure from this settled rule of administration of partnership assets, where there are individual claims and individual property, is wholly founded upon the case of *Wardlaw* v. *Gray* (Dudley Eq., 110), and that wholly upon a total misconception of the English cases cited to support it. With great deference to the opinions of the eminent jurists whose decisions are here reviewed, I am impelled to the conclusion, that, in the case under consideration, the individual property is first applicable to the individual debts, and that the provisions upon that subject in the assignment are in strict conformity to the established rule, and, therefore, constitute no improper preference"—and dismissed the complaints.

From this decree the plaintiffs, partnership creditors, appeal to this court upon the ground, *inter alia*, that it was error of law to hold, "that as between the partnership creditors of a firm, and the individual creditors of its members, the individual assets are first liable to individual debts before any application thereof may be made to partnership debts ; and for not holding that if, after applying partnership assets to partnership debts, any portion of such debts should remain. unsatisfied, such portion should come in ratably with the individual debts of the several members as against their individual assets," &c.

The question is certainly an important one, which in the affairs of business life may arise daily, and it should be, if it has not already been, clearly and fully settled, so that all may know what the law is to which their actions should be conformed. It is true that there has been much discussion, and some difference of opinion, on the subject involved, not, as it seems to us, arising so much from the inherent difficulty of the subject, as from an artificial rule originally adopted in the English Bankrupt Courts mainly, as it would" seem, on account of its simplicity and convenience of application, viz., that partnership creditors are entitled to partnership property, and, *e converso*, individual creditors are entitled to individual property, a rule of which Judge Story says : "It is not too much to say that it rests on a foundation

as questionable and unsatisfactory as any rule in the whole sys-
tem of our jurisprudence." *Story Part.*, 577.

As we understand it, no rule upon the subject has ever been
declared by positive statute, either in England or America; but
whatever rule there may be has grown up entirely from the dicta
of elementary writers and adjudications of the courts, supposed
to be founded on some principle. But so far as concerns this
"rule of reciprocity," as it is sometimes called, it does not seem
to us to have been based upon any principle or general equities
of the parties. All agree that the partnership creditors have an
equity to exhaust the partnership assets, for the double reason
that they have two funds, and the individual members have no
interest until the partnership is settled. But the same cannot be
said of the individual creditors. They are not creditors of the
firm at all, but only of their individual debtor, whose individual
property, including his clear share of the firm, is liable for all
his debts alike, both partnership and individual. It strikes us
that there is nothing in the relations or the equities of the
respective classes to authorize or justify the application of the
convenient *Procrustean* rule of "reciprocity."

But it is argued that the Circuit decree is in conformity with
the English rule, and we should follow it without regard to its
reason or equity, and disregard our own cases which have made
a departure from it, for the sole reason that it was error to make
that departure, and it should be corrected by returning to the
rule. Without going back to ascertain what is the precise rule
adopted in the English Courts of Bankruptcy and Chancery, it
is quite clear that as far back as the case of *Wardlaw* v. *Gray*
(1837), cited in the Circuit decree, the doctrine was announced
in this State "that a partnership creditor has the right to resort
either to the partnership property or to the separate property of
the parties; but as a party having two funds, he may be com-
pelled by the separate creditors of one of the partners to exhaust
the partnership property before he proceeds against that of an
individual partner," &c. Whether this decision did or did not
run counter to what is said to be the English rule upon the sub-
ject, it is quite as clear that it has never been expressly over-
ruled; but, on the contrary, has been recognized and followed,

and at the time of the execution of the assignment under consideration was, as we think, the law of the State. In *Gowan* v. *Tunno et al.*, Rich. Eq. Cases, 369 (1832), it was held that "though partnership effects should be first applied to partnership debts, yet after these are exhausted a judgment against the partners as such binds the separate estate of each partner from its date."

In *Fleming* v. *Billings & Belk* (1856), 9 Rich. Eq., 149, it was held that "copartnership creditors are first to be paid out of the copartnership fund, and if that prove insufficient, then they are to come in with the private creditors (respect. being had to liens) as against the individual property of the copartners." In *Gadsden* v. *Carson et al.*, 9 Rich. Eq., 252 (1857), it was held that "the individual creditors of a partner have not such exclusive right to be paid out of his individual property as to render fraudulent an assignment of it for the benefit of the creditors of the firm. Partnership creditors having two funds to which they can resort, and individual creditors of the partners having but one—the private property of the debtor (including any balance which may remain to him from the firm, after its affairs are settled)—such individual creditors have an equity to compel the partnership creditors to resort first to the partnership assets; but after they are exhausted, the partnership creditors have as good right to be paid out of the private property of a partner as his individual creditors," &c. In this case Chancellor Johnston remarked that it "was in conformity to *Wardlaw* v. *Gray*, with which we see no reason to be dissatisfied."

In *Wilson* v. *McConnell*, 9 Rich. Eq., 500 (1857), it was held that "where a copartner, having a separate estate, dies, the copartnership creditors have the right first to exhaust the copartnership estate, and if that proves insufficient to pay their demands, then they are to be paid from the separate estate of the copartners *pro rata* with his separate creditors." In *Adickes* v. *Lowry*, 15 S. C., 128 (1880), it is true that an intimation is given that the question might be still open, but that was not intended to decide anything. The remark was: "But even if this were so, there would still remain the very important and interesting question, whether the separate creditors of Bratton

would not have in equity a preference over the partnership creditors to the separate assets of Bratton, &c.   But inasmuch as this question was not raised in the court below, and has not been argued here, we do not propose to enter upon its consideration now," &c.

In *Hutzler Bros.* v. *Phillips*, 26 S. C., 136 (1886), it was held "that partnership creditors, after exhausting partnership assets, are entitled to share the separate property of the partners *pro rata* with unsecured individual creditors." The Chief Justice reviewed all the authorities, saying, among other things: "We think the true doctrine is as stated by the Circuit Judge with respect to the right of the separate creditors, if any equity exists in his behalf, such as two funds,   *   *   *   to throw the copartnership creditors on the partnership assets in the first instance, but after the partnership assets have been fully and fairly exhausted, to come in *pro rata* with the separate creditor. This seems to be the weight of authority with us. Besides, a debt contracted by a copartnership is not only a debt of the firm, but a debt, in substance, of each individual member of the firm, and the property of the firm and of each member is liable for it. But the property of the firm is not liable for the separate debt of a member ; only the interest of a member is liable, which is nothing until the firm debts are paid," &c.

We think this case finally settled the law in this State. But, as if to put the matter beyond all dispute, the very last work upon the subject of partnership, published this year (1889), expressly approves and cites from this case, as containing the proper exposition of the law upon the subject, both on principle and authority. The author says : "The insolvent, by his inability to meet his liabilities, is not the less, but all the more, a debtor. He owes to his creditors not the property itself, nor any other asset, but merely the price of the property. The debt is personal, without any lien or preference for its payment out of the debtor's estate. The individual partner is, however, not less liable for a firm debt than is the firm itself. The several liability of the partners is no less a constituent of the partnership obligation than is their joint obligation. Both spring from the root of partnership. The joint creditors, therefore, are entitled at law to

share the separate estate of a partner with his individual creditors," &c.   See *Parsons on "Principles of Partnership,"* section 108, citing *Hutzler Bros.* v. *Phillips,* and other cases.

We have not the least idea that the parties intended to do anything wrong, but the assignment was not in conformity with the law as we understand it, and had the effect of creating preferences not allowed by law.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cases remanded to the Circuit Court for such further proceedings as the parties may be advised, in accordance with the conclusions herein announced.