OPINION OF THE COURT
Ira B. Harkavy, J.
A bank’s right to charge back a customer’s account when the bank has made provisional settlement for items that are subsequently dishonored is codified in section 4-212 of the Uniform Commercial Code. The issue before this court is the applicability of section 4-212 of the Uniform Commercial Code to accounts held in the name of a partner when the dishonored items were the subject of banking transactions conducted by one partner allegedly acting outside the scope of the partnership business. May a bank avail itself of the charge back remedy against accounts in the name of the individual nonparticipating partner? And if so, is the “innocent” partner entitled to indemnification from the wrongdoer?
Plaintiff, a New York banking corporation, commenced this action against defendants, Michael De Santis (hereinafter De Santis), James K. Noonan (hereinafter Noonan) and De Santis and Noonan Realty Co. (hereinafter D/N Realty), to recover for an overdraft in the account of D/N Realty maintained at a branch of plaintiff’s bank.
*492 D/N Realty is a partnership consisting of De Santis and Noonan organized in July, 1979 to engage in the real estate business. On July 24, 1979 D/N Realty opened a partnership account at the plaintiff’s branch located at 7923 Third Avenue, Brooklyn, New York. In connection with the opening of the account, Noonan and De Santis executed a signature card and a partnership certificate and authorization.
The partnership certificate and authorization provided in pertinent part “You [plaintiff] are authorized to honor, to receive and/or pay all instruments signed in accordance with the terms of this instrument even though drawn or endorsed to the order of any partner signing the same and/or tendering for cashing, or in payment of the individual obligation of such partner or for deposit to his personal account and you are not required or obligated to inquire as to the circumstances of the issuance or use of any instrument signed in accordance herewith or the application or disposition of such instrument or the proceeds thereof.”
On December 15, 1980, Noonan deposited into the D/N Realty account two checks drawn on the Bergen State Bank in Bergenfield, New Jersey, each in the sum of $6,000. Both checks were drawn on the account of Robert J. Mallon, Esq. Noonan testified that he deposited the checks as an accommodation to a friend, and that he was simply acting as a check cashier.
Check No. 979 was payable to Bak Air Freight Co., and the reverse side was indorsed Bak Air Freight Inc., Allen Krauss and was stamped:
FOR DEPOSIT ONLY
DE SANTIS & NOONAN REALTY CO.
Check No. 980 was payable to Allan Krauss and the reverse side was indorsed Allan Krauss, Noonan and stamped with the same stamp as Check No. 979.
On December 23, 1980, defendant Noonan drew two checks on the partnership account, one in the amount of $9,000 for cash and the other for $3,000 to be deposited in his own personal bank account. In belief that the items deposited on December 15 had been collected, since more than five business days had elapsed, Robert N. De Chillo, *493 the branch manager, authorized the encashment of the $9,000 check. The $3,000 check was deposited to Noonan’s personal account.
The following day, December 24, 1980, De Chillo was notified by the main office of his bank that they had been informed by the drawee bank that the two checks drawn on it were being returned unpaid because of a “stop payment”. When the checks were returned, the amount of $12,000 was charged to the partnership account thereby creating an overdraft for the amount.
The overdraft was reduced to approximately $9,000 when the bank reapplied the $3,000 deposit in Noonan’s personal account to the partnership overdraft.
Subsequent attempts to have the partnership and Messrs. De Santis and Noonan pay the overdraft were unsuccessful and this suit was commenced.
The summons and verified complaint were served on each of the partners by substituted service in April and May, 1981. Both defaulted and a judgment was entered thereon on July 14, 1981.
Proceedings to enforce the judgment were largely unsuccessful although the bank did restrain bank accounts of De Santis at several banks in which he had nominal balances.
In February, 1982, De Santis moved by order to show cause to vacate the default judgment as against him. The bank consented to the application on condition that the judgment and restraining notices remain as security. De Santis served an answer which put into issue the material allegations of the complaint, raised an affirmative defense of negligence and cross-claimed against Noonan for any amount the bank recovers from De Santis.
De Santis’ first argument is that the transactions described herein were conducted solely by Noonan without the authority of De Santis, that Noonan was acting outside the scope of the partnership business, and therefore that De Santis’ individual assets may not be used to satisfy the overdraft. De Santis does not dispute that he signed the “Partnership Certificate and Authorization”. His defense rests on the theory that he did not cash or consent to the *494 cashing of the checks which created the overdraft nor did he receive any of the proceeds.
It is undisputed that the transactions herein were conducted by Noonan without the knowledge or consent of De Santis. De Santis predicates his defense on the premise that because he neither knew of, nor condoned Noonan’s actions that Noonan was acting outside the scope of the partnership business. Subdivision 1 of section 20 of the Partnership Law states: “Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.”
The test of apparent authority is subjective. If a third party could have been said to have reasonably relied on the apparent authority then the alleged agent’s principal is estopped from claiming lack of knowledge or consent. In light of the “Partnership Certificate and Authorization”, the plaintiff could be said to have reasonably relied upon Noonan’s apparent authority to make the banking transactions described herein. It is well settled that one partner’s actions need not be explicitly authorized, consented to, or ratified by another partner. “A partnership is a voluntary association, by which in all the affairs connected with the business an authority is impliedly given to every member to dispose of the partnership property as if it were his own personal effects. Such is the indivisable nature of their interest, and the capacity of every member to act as the authorized agent of all, that whatever one does in the course of the partnership business has the same efficacy as if all had severally and directly joined in the act.” (Mabbett v White, 12 NY 442, 455.) In essence, an action need not be actually within the scope of the partnership business, so long as it is apparently within the scope of the partnership business.
De Santis asserts that he had no knowledge of Noonan’s transactions with the plaintiff prior to his telephone con *495 versation with plaintiff’s branch manager after the discovery of the overdraft. Section 23 of the Partnership Law states: “Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.” De Santis’ lack of actual notice is immaterial. Section 23 of the Partnership Law imparts constructive notice of transactions within the scope of the partnership business by one partner to all the other partners.
De Santis cites section 24 of the Partnership Law in his memorandum of law. Section 24 states: “Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.” The applicability of section 24 of the Partnership Law to the case at hand is dubious. Section 24 of the Partnership Law deals with “wrongful act or omission” such as tort or fraud. (Halperin v Edwards, 430 F Supp 121; Guild v Herrick, 51 NYS2d 326.) The instant case is predicated upon an alleged breach of contract, i.e., the “Partnership Certificate and Authorization”, and not upon a theory of tort liability. This distinction is important because partners are jointly and severally liable for torts committed in the course of partnership business and an action may be brought against all or any of them in their individual capacities or against the partnership as an entity. (Martinoff v Triboro Roofing Co., 228 NYS2d 139; Pedersen v Manitowoc Co., 25 NY2d 412; Payne v Payne, 34 AD2d 375, revd on other grounds 28 NY2d 399.)
The liability of a partnership in a breach of contract action is more closely addressed by sections 25 and 26 of the Partnership Law. Section 25 states:
“The partnership is bound to make good the loss:
*496 “1. Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and
“2. Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by a partner while it is in the custody of the partnership.”
Section 26 states:
“All partners are liable
“1. jointly and severally for everything chargeable to the partnership under sections twenty-four and twenty-five.
“2. Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.”
Subdivision 2 of section 26 of the Partnership Law suggests that partners are jointly liable on contractual obligations. New York Jurisprudence states (43 NY Jur, Partnerships, § 138, p 143): “A partner’s liability resting upon a partnership contract, and not a tort, is necessarily joint and not several. [Salem v Seigel, 126 NYS2d 214; Patrikes v J. C. H. Serv. Stas., 180 Misc 917.] However, upon each partner rests an absolute liability for the whole amount of every debt due from the partnership and although originally a joint contract, it may be separate as to its effects. [Patrikes v J. C. H. Serv. Stas., supra.] Each partner is still liable severally in equity in the event of need to reach his several estate. [Seligman v Freidlander, 199 NY 373.] This individual liability dates back to the time when the obligation was incurred and arises simultaneously with the joint liability, so that with respect to the ultimate rights of the creditor, in theory of law, the contractual obligation of a partnership is incurred by each and by all.” (Patrikes v J. C. H. Serv. Stas., 180 Misc 917, affd 180 Misc 927.)
The facts establish that the overdraft in the partnership checking account is a partnership obligation and, therefore, the obligation of each of the partners. Their individual liability arises out of the notion of a partnership and is an incident thereof. (Ruzicka v Rager, 305 NY 191.)
*497 In the instant case the partnership assets were insufficient to satisfy the judgment. Under such circumstances the individual assets of De Santis may rightfully be applied towards satisfaction of the judgment (Stern v Low, 27 AD2d 756; Friedman v Gettner, 6 AD2d 647, affd 7 NY2d 764.) The court finds that Noonan had apparent authority to conduct the banking transactions that are the subject of this action, that the transactions between the plaintiff and Noonan were within the scope of the partnership business, that De Santis is attributed with constructive notice of Noonan’s actions and that the contractual obligation between plaintiff and D/N Realty Co. is one for which the partnership is liable. The court further finds that since the partnership assets are insufficient to cover the overdraft (and the judgment) that the individual assets of both of the partners may be applied as such.
The second issue which the court addresses is the propriety of the plaintiff’s action in charging back Noonan’s personal account.
On December 24, 1980, the two checks deposited by Noonan on December 15, 1980, were returned by the drawee marked “Stop Payment.” The partnership account was thereupon charged $12,000. Noonan’s personal account was charged with the $3,000 he deposited in his account which $3,000 was recredited to the partnership account leaving an overdraft balance of $9,002.92, the amount claimed in the complaint.
Under current bank practice, banks make a provisional settlement for items when they are received and then await subsequent determination of whether the item will be finally paid. Subdivision (1) of section 4-212 of the Uniform Commercial Code codifies the rights of the bank where the item being collected is not finally paid. Provision is made for the reversal of the provisional settlement, charge-back of provisional credits and the right to obtain a refund.
Subdivision (1) of section 4-212 of the Uniform Commercial Code provides that: “If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments *498 by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer’s account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts.”
The remedy of charge-back is conditioned on the requirement that the bank “by its midnight deadline or within a longer reasonable time after it learns of the facts returns the items or sends notification of the facts”.
Midnight deadline is defined by section 4-104 (subd [1], par [h]) of the Uniform Commercial Code as, “with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later”.
There is a factual dispute between the parties as to when the partnership was given notice of this dishonor. The branch manager testified that he orally advised Noonan of the dishonor on December 24, 1980 (the same day that plaintiff was informed of the New Jersey bank’s dishonor) and again on December 26, 1980. The Bank of Commerce debit advice is dated December 26, 1980 and reacted upon the branch on December 26, 1980. Noonan disputed the branch manager’s version indicating that oral notice was not received until the week of December 29, 1980. If Noonan’s version of the facts is assumed true, then De Santis urges that plaintiff failed to abide by the midnight deadline rule which would have obliged plaintiff to give notice of the dishonor by December 26, 1980 and that therefore plaintiff is barred from charging back the depositor’s account.
Even assuming, arguendo, that notice of dishonor was not given until the week of December 29, 1980, the court finds that plaintiff rightfully charged back the depositor’s account. Subdivision (1) of section 4-212 of the Uniform Commercial Code provides that a bank may charge back the depositor’s account if it sends notification of the dishon- or “by its midnight deadline or within a longer reasonable *499 time” (emphasis added). December 24, 1980 was both a Wednesday and Christmas Eve. The following day was both a legal and bank holiday. The court recognizes that December 26,1980, which had been the midnight deadline, was both a Friday and the day after Christmas. Although not a legal holiday, when the day after Christmas falls on a Friday many businesses give their employees the benefit of a four-day weekend. In light of the holiday season the court finds that even if notice of dishonor was not orally communicated until the week of December 29, 1980, that this would constitute a reasonable time within the contemplation of subdivision (1) of section 4-212 of the Uniform Commercial Code. A bank’s right to charge back a depositor’s account is substantiated by case law as well as codified in the Uniform Commercial Code. “[I]f the collecting bank has credited its customer’s account for an item, but fails to receive a final settlement for the item, it may charge back the customer’s account.” (622 West 113th St. Corp. v Chemical Bank New York Trust Co., 52 Misc 2d 444, 446.) Where payee endorsed and deposited check in his account with bank, bank credited payee’s account and forwarded check to foreign payor bank for payment and payee withdrew full amount, of deposit before dishonor of check by payor bank, payee remained owner of check and bank was agent for collection, so that credit given for deposit was only provisional settlement and risk of loss on check remained in payee as owner, and not upon agent bank, and bank’s failure to make formal protest was immaterial since payee’s liability was based not on his endorsement of check but on his status as depositor and with-drawer of funds. (Mercantile Bank & Trust Co. v Hunter, 31 Col App 200.)
De Santis contends that section 4-212 of the Uniform Commercial Code, under which the collecting bank may revoke settlement given in case of dishonor and charge-back the amount to its customer if it “sends” notification of the dishonor, requires that the notice shall be given in writing. The court disagrees with defendant’s interpretation. Defendant concedes that subdivision (4) of section 3-508 of the Uniform Commercial Code provides that notice of dishonor may be given in any reasonable matter. “Rea *500 sonable” notice would include oral or written. Oral notice was given immediately upon the plaintiff’s learning of the dishonor and written notice was included in the customer’s next monthly statement. Subdivision (3) of section 3-508 of the Uniform Commercial Code permits oral notice of dishonor. Oral notice of dishonor was held valid in Salem Nat. Bank v Chapman (64 Ill App 3d 625).
Defendant urges that plaintiff failed to exercise ordinary care in allowing a cash withdrawal of $9,000 against funds drawn on an out-of-State bank on the sixth business day following the deposit when there was insufficient cash reserve for any possible charge back. Subdivision (4) of section 4-212 of the Uniform Commercial Code states:
“The right to charge-back is not affected by * * *
“(b) failure by any bank to exercise ordinary care with respect to the item”..
Allowing an overdraft generally does not constitute a failure by a bank to exercise ordinary care. In fact De Santis testified that he had withdrawn almost $8,933.34 in cash from the account on October 28, 1980.
Defendant urges that the court recognize the decision of Justice Imperato in 'the case of Manufacturers Hanover Trust Co. v Akpan (91 Misc 2d 622). Judge Imperato’s decision reviews the law as it applies to the rights of a bank to charge back a customer’s account when notice of dishon- or is not sent by the midnight deadline. In the instant case the court finds that notice of dishonor was given by the midnight deadline and as such the holding in Manufacturers Hanover Trust Co. v Akpan is not applicable. Further, assuming the right of charge-back was not available to plaintiff, that would not affect plaintiff’s right to recover its loss in a plenary action. Subdivision (5) of section 4-212 of the Uniform Commercial Code expressly provides so.
The last issue that the court addresses is De Santis’ counterclaim against his copartner Noonan for any judgment that the bank may recover of De Santis. The court finds that even though Noonan’s actions bound the partnership and De Santis, individually, that Noonan’s actions were wrongful and that De Santis should be allowed indemnification from Noonan for any part of the judgment which the plaintiff may recover from De Santis.
*501 Accordingly, the court finds that Noonan’s actions were justifiedly relied upon by the plaintiff as within the scope of the partnership business, that the partners are jointly liable on the “Partnership Certificate and Authorization”, that the plaintiff rightfully charged back the overdraft, and that De Santis is entitled to indemnification by Noonan for all amounts recovered from him by the plaintiff.
Judgment for plaintiff against Michael De Santis for $9,002.92 with interest from December 23, 1980 for costs and disbursements.
Judgment is in favor of Michael De Santis against James K. Noonan for the amount of plaintiff’s judgment.