**Kenneth E. THOMPSON, individually, and in his capacity as a general partner of Wolman Duberstein and Thompson, an Ohio general partnership, Appellant–Defendant,**

v.

**WAYNE SMITH CONSTRUCTION COMPANY, INC., Appellee–Plaintiff.**

No. 49A02–9211–CV–551.

Court of Appeals of Indiana, Second District.

Sept. 20, 1994.

David R. Hamer, Stacy L. Hill, Dann Pecar Newman Talesnick & Kleiman, Indianapolis, for appellant.

David O. Tittle, Karl L. Mulvaney, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellee.

SULLIVAN, Presiding Judge.

In 1986, Wayne Smith Construction Company, Inc., (Wayne Smith), procured a judgment on a contract against the partnership of Wolman Duberstein and Thompson, (the Partnership). During the intervening time, Wayne Smith has tried to collect on the judgment in South Carolina, Ohio, and Indiana. The South Carolina Court of Appeals, the Supreme Court of Ohio, and now the Court of Appeals of Indiana all have been involved in this dispute. This well-traveled case raises two issues for our review, which we restate as:

I. Whether the trial court, in granting summary judgment to Wayne Smith, erred by failing to apply the doctrines of full faith and credit and *res judicata* to the South Carolina judgment regarding the liability of the individual partners; and

II. Whether the trial court erred by failing to apply the doctrines of full faith and credit and *res judicata* to the Ohio judgment regarding damages.

The genesis of this dispute arose in South Carolina when the Partnership hired Wayne Smith to build two homes on Hilton Head Island. After a dispute arose between the parties regarding payment, Wayne Smith sued the Partnership and the individual partners for breach of contract in the South Carolina Court of Common Pleas. The South Carolina trial court entered judgment against the Partnership and each partner individually. The court calculated the damages plus interest at $107,381.65.[1] On appeal, the South Carolina Court of Appeals affirmed the judgment against the Partnership, but vacated the judgment against the individual partners. *Wayne Smith Constr. Co. v. Wolman, Duberstein, and Thompson* (1987) S.C.App., 294 S.C. 140, 363 S.E.2d 115 (*Wayne Smith I*). Wayne Smith did not appeal this decision, and the time for appeal has expired.

Two years later, Wayne Smith registered the South Carolina judgment in Ohio, where it believed Partnership assets existed. After

recovering $2,582.31, the Partnership assets were exhausted. Wayne Smith then instituted a new action in Ohio against the Partnership and the partners individually for the balance of the judgment. The partners defended the suit, claiming that because the South Carolina appellate court vacated the judgment against the individual partners, the doctrines of full faith and credit and *res judicata* dictated that Ohio could not enter a judgment against them. Nevertheless, the Ohio trial court entered judgment for the balance against the partners individually. The Partnership and the individual partners eventually appealed to the Ohio Supreme Court.

While the Ohio judgment was on appeal to the Ohio Supreme Court, Wayne Smith filed suit against Kenneth E. Thompson (Thompson), a resident of Marion County. At all relevant times Thompson was a general partner of the Partnership. The Indiana trial court granted Wayne Smith's motion for summary judgment and entered judgment against Thompson for the full amount of the unpaid South Carolina judgment, $157,703.01. Almost six months after the Indiana trial court's decision, the Ohio Supreme Court handed down its decision, which affirmed the judgment against the individual partners, but limited each partner's total liability to a *pro rata* share. *Wayne Smith Constr. Co. v. Wolman, Duberstein & Thompson* (1992) 65 Ohio St.3d 383, 604 N.E.2d 157 (*Wayne Smith II*). As there were three partners in the Partnership, the Ohio court held that each partner was liable only for one-third of the South Carolina judgment. Thompson now appeals the Indiana judgment against him individually, and alternatively the judgment against him for the full amount of the debt.

Before addressing the merits of this case, we note our concurrence with Professors Bromberg and Ribstein who write, "The enforcement of partnership obligations is the least uniform—and most confusing—of all aspects of American partnership law." 2 Alan R. Bromberg & Larry E. Ribstein,

---

1. Five months later, the trial court entered a second judgment against the Partnership and partners for $750.00 as reimbursement for attor-

ney fees expended in defending an appeal from an interlocutory order.

*Bromberg and Ribstein on Partnership* 5:53 (1994).

## I. *Partnership Assets*

■ Thompson contends that because the South Carolina appellate court vacated the judgment against the individual partners, full faith and credit and *res judicata* prevent either Ohio or Indiana from reaching the partners' individual assets. We disagree.

The South Carolina court held that a partnership is its own entity, separate and distinct from the individual partners. *Wayne Smith I, supra* 363 S.E.2d at 117. This is consonant with the modern view of partnership law.[2] Accordingly, the court held that a suit upon a contract with a partnership cannot give rise to a suit against the partners in their individual capacities on such contract.[3] *Id.* The court went on to state that Wayne Smith would have to prove a contract with each individual partner in his individual capacity to recover against each one individually.[4] *Id.*

## A. *Individual Liability*

■ At first blush, the posture of Thompson's argument is persuasive. He argues that South Carolina conclusively established the lack of individual liability on the part of the partners. However, this argument necessarily presupposes that the only way to reach a partner's individual assets is to show that the partner, in his individual capacity, entered into a separate contract with the creditor. This supposition ignores that, under the law of South Carolina and of most other states which impose joint liability for partnership obligations, there are two ways to establish the individual liability of a partner. One way is to prove a separate contract. The second way is to prove that partnership assets have been exhausted.[5]

■ Under South Carolina law, a partnership creditor must try to satisfy his judgment from partnership property before reaching individual property; whereas an individual creditor may attach any property the partner owns at any time. *Blair v. Black* (1889) 31 S.C. 346, 9 S.E. 1033, 1035.[6] This exhaustion

2. Historically, a partnership could not be sued in its own name because it was considered an "inseparable collection of individuals." *Bromberg & Ribstein, supra* at 5:68, 5:89. South Carolina has adopted the more modern view that a partnership is a distinct entity with regard to the legal relationships and liabilities of the partners. *Chitwood v. McMillan* (1939), 189 S.C. 262, 1 S.E.2d 162. However, South Carolina still retains the requirement that a partnership may be sued only by naming all of the partners. *Marvil Properties v. Fripp Island Dev. Corp.* (1979), 273 S.C. 619, 258 S.E.2d 106.

3. In reaching this result, the South Carolina court relied upon an earlier decision, *Broom v. Marshall* (1984) S.C.App., 284 S.C. 530, 328 S.E.2d 639. At least one commentator has criticized *Broom* as an "arbitrary distinction." *Bromberg & Ribstein, supra* at 5:67.

4. The conclusion that individual liability, at least before partnership assets have been exhausted, must be premised upon separate contracts with each individual partner, has been reached by at least three other jurisdictions. *See, e.g., Mandan Sec. Bank v. Heinsohn* (1982) N.D., 320 N.W.2d 494, 497 (noting that "the nature of a partner's liability on partnership debts is different than his individual liability on individual obligations.") *overruled by First Interstate Bank of Fargo v. Larson* (1991) N.D., 475 N.W.2d 538; *Balley v. Davis* (1954) 75 Idaho 73, 267 P.2d 631; *Ruzicka v. Rager* (1953) N.Y.App., 305 N.Y. 191, 111 N.E.2d 878.

5. Bromberg and Ribstein recognize a third method of establishing the partners' individual liability. *Bromberg & Ribstein, supra* at 5:55. A creditor may reach individual assets by showing that the partnership is insolvent at the time suit is brought on the partnership debt. *Id.* To rely upon such a method, Wayne Smith would have had to raise this issue at trial. Accordingly, any allegations of solvency or insolvency would be barred by res judicata. However, the Partnership was not insolvent at the time of suit, as evidenced by the fact that Wayne Smith collected at least $2,582.31 of partnership assets after the judgment. In any event, the bases for claiming individual liability does not rest upon a claim that the Partnership is insolvent. Rather, it rests upon grounds that the partnership assets have been exhausted, which is a separate allegation.

6. This rule originated to protect individual creditors from partnership creditors. A partnership creditor has "two funds," the partnership property and individual property. An individual creditor has only one fund. *Blair, supra* 9 S.E. at 1035. Accordingly, an individual creditor may force a partnership creditor to seek satisfaction from partnership assets first. *Id.* While these cases could be read as holding that the exhaustion rule only applies at the option of an individual creditor, we decline to do so. The law is properly concerned with economy and equity. Where there is enough property to satisfy both partnership and individual creditors, a partnership creditor should not be allowed to satisfy his

rule is recognized in most jurisdictions in which partnership liability is joint. *Bromberg & Ribstein, supra* at 5:59. Once partnership assets have been exhausted, however, a partnership creditor becomes a creditor of the individual partner with the same rights and upon the same level as the partner's other individual creditors. *Hutzler v. Phillips* (1886) S.C., 1 S.E. 502; 59A Am.Jur.2d *Partnership* § 38, at 556 (1987). "If [partnership property] proves insufficient to pay [partnership creditors'] demands, then they are to be paid from the separate estate of the copartners, *pro rata* with his separate creditors." *Blair, supra* 9 S.E. at 1035.[7] By vacating the judgment against the individual partners, the South Carolina appellate court merely established that, at the ·time judgment was entered, Wayne Smith was still a creditor of the partnership and not of each partner individually.

Some authorities characterize this deferred liability as a transition from joint liability to joint and several liability. "The net result is that each joint obligor is, in effect, individually liable...." John Edward Murray, Jr., *Murray on Contracts* § 270, at 549 (1974). Like South Carolina, New York imposes joint liability upon partners for the partnership's contractual obligations. N.Y. Partnership Law §.26 (McKinney 1988). New York went so far as to state that once partnership assets are exhausted, each partner becomes individually and *severally* liable for the debt out of his own individual assets.[8]

"A partner's liability resting upon a partnership contract ... is necessarily joint and not several.... [A]lthough originally a joint contract, it may be separate as to its effects. Each partner is still liable severally in equity in the event of need to reach his several estate [citations omitted]." *Bank of Commerce v. De Santis* (1982) N.Y.Civ.Ct., [114 Misc.2d 491] 451 N.Y.S.2d 974, 978.

Regardless of whether a partner's joint liability is actually transformed into several liability, the law is clear that once partnership assets are exhausted, each partner becomes individually liable for the debt.

The South Carolina decision established that neither of the two circumstances giving rise to individual liability existed. The existence of a separate contract would have to be raised in the original action, thus the court's finding on that issue is *res judicata* and binding upon this court through the Full Faith and Credit Clause. However, it is impossible for a creditor to prove that partnership assets have been exhausted until a judgment had been procured against the partnership and returned unsatisfied. The court based its finding of non-liability upon separate-contract grounds. It did not state that both methods of proving individual liability had been foreclosed. Thompson concedes that the partnership assets have been exhausted. Accordingly, Wayne Smith is now on the level of other unsecured creditors of all the individual partners.

To reach a contrary holding would be to conclude that South Carolina has abolished

---

debt out of individual property, leaving the individual creditor with no remedy. This rule is sound whether the individual creditor has the foresight to insist upon its application or not. Indeed many cases leave out the "option" requirement. *Hutzler v. Phillips* (1886) S.C., 1 S.C.Eq. (1 Des.) 502, 508; *Gowan v. Tunno* (1832) S.C.App., 9 S.C.Eq. (Rich.Cas.) 369.

7. For additional authority, see *Hutzler, supra,* at 506 ("[P]artnership creditors, after exhausting partnership assets, may share *pro rata* in the individual property of the partners."); *Gadsden v. Carson* (1857) S.C.App., 30 S.C.Eq. (9 Rich. Eq.) 252, 267 (Once partnership property is exhausted, "the partnership creditor has as good a right to be paid any balance still remaining unsatisfied, out of the private property of the partner, as any other of his individual creditors."); *Fleming v. Billings* (1856) S.C.App., 30 S.C.Eq. (9 Rich.Eq.) 149, 152 ("[P]artnership creditors are first entitled to be paid out of the proceeds considered to be partnership funds and if that is insufficient to pay them, then they are to come in with the private creditors ... as against the proceeds regarded as private property.").

8. It may be an overstatement to say that South Carolina liability is as broad as that recognized in New York. However, South Carolina has stated, "The several liability of the partners is no less a constituent of the partnership obligation than is their joint obligation. Both spring from the root of the partnership." *Blair, supra,* 9 S.E. at 1036.

the general partnership form of business.[9] It is basic hornbook law that the major difference between corporations, limited partnerships, and general partnerships is the liability of the officers. *Bromberg & Ribstein, supra* at 5:52. People form limited partnerships or corporations mainly to avoid the full liability of a general partner and to protect their individual assets. We refuse to believe that South Carolina has tacitly done away with general partnerships, especially in light of the many South Carolina statutes regulating such partnerships. S.C.Code Ann. § 33–41–10 *et seq.* (Law.Co-op.1990).

### B. *Execution*

At oral argument, Thompson provided an alternative argument, which must also fail. Thompson points out that Wayne Smith first registered the South Carolina judgment against the partnership in Ohio and executed upon it. When the execution failed to yield sufficient assets, Wayne Smith filed a complaint against the individual partners. Thompson argues that because Wayne Smith already had executed upon the South Carolina judgment, the second action in Ohio was not an attempt to enforce the same judgment. Rather, it was an attempt to relitigate the individual partners' liability. If the second Ohio complaint alleged a contract between each individual partner, we would agree that this complaint was barred by *res judicata.* But that is not the case.

The second Ohio complaint was also based upon the South Carolina judgment against the partnership. The only difference between the first Ohio action and the second Ohio action was that the first sought execution against partnership assets, while the second sought execution against the partners' individual assets. This progression, of course, is in line with the general rule that a partnership creditor must first exhaust partnership assets before pursuing individual as-

sets. In fact, the Ohio courts treated the second Ohio action as an execution. The Ohio Supreme Court as well as Ohio appellate courts have applied Ohio Civil Rule 69, which pertains to " '[t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution....' " *Wayne Smith II, supra,* 604 N.E.2d at 164. The Ohio Supreme Court went on to outline the Ohio procedure "to be followed to subject the individual property of partners to the satisfaction of a judgment obtained against the partnership in the firm name." *Id.* Thompson's argument, though ingeniously wrapped, is merely an assertion that partners' individual property cannot be used to satisfy a partnership debt. We have rejected that argument.

We note that as the law of partnership progresses, the imposition of joint liability has fallen from favor. After *Wayne Smith I* was decided, South Carolina followed the national trend and made partners jointly and severally liable for all partnership obligations. *See* S.C.Code Ann. § 33–41–370 (Law.Co-op.1990).

### II. *Share of Liability*

Thompson argues that if he is personally liable for the judgment, he is only liable for a one-third share. Although this issue was never presented in the Ohio litigation or the subsequent appeal, the Ohio Supreme Court *sua sponte* determined that because Thompson is a joint debtor, he is liable only for a *pro rata* share of the judgment. *Wayne Smith II, supra,* 604 N.E.2d at 161. Thompson argues that this holding must be given full faith and credit. Again, we disagree.[10]

### A. *The Law of Joint Liability*

The Ohio Supreme Court cites no authority for its proposition that a joint debtor is liable only for a pro-rata share. We have found no such authority. Such limitation is not an incident of joint liability.

---

9. "It is common knowledge that partners are in turn liable for partnership obligations...." *Bromberg & Ribstein, supra* at 5:52. "The general rule is that a judgment creditor of the partnership may execute his judgment against either partnership or individual property...." Harold Gill Reuschlein & William A. Gregory, *Agency and Partnership* 314 (1979). This general rule always has been followed in South Carolina.

10. Wayne Smith urges us to ignore the Ohio decision as *obiter dicta.* However, the court spends almost an entire page explaining its position on joint liability, and we cannot in good conscience state that the court did not mean its decision to have force and effect.

Thompson cites no authority in support of Ohio's position, nor have we found any.

The authorities agree that each joint debtor is responsible for the entire amount of the debt. *Restatement (Second) of Contracts* § 289(1) (1988); Arthur L. Corbin, *Corbin on Contracts* § 928, at 889 (1952); *Murray, supra* at 549; *Bromberg & Ribstein, supra* at 5:71; 30 Am.Jur.2d *Executions* § 101, at 496 (1967). In his treatise on contract law, Professor Corbin recognizes: "Each Joint Promisor is Bound for the Whole Performance Promised[.] . . . At common law . . . and by modern law as well, the extent of the duty of each and every [joint debtor] [is] the same and [is] enforceable against him in full." *Corbin, supra* at 888. "Once a joint judgment has been obtained, the obligee may enforce that judgment in the usual way against *any one* or all of the joint obligors. . . . [E]ach joint obligor is, in effect, individually liable for the whole of the joint obligation." *Murray, supra* at 549 (emphasis supplied).

The difference between joint liability and joint and several liability is merely procedural and does not affect substantive law.[11] Official Comment, 6 U.L.A. 175 (1969); *Corbin, supra* at 888. The major difference between the two types of liability is that in joint liability all joint parties must be sued, whereas in joint and several liability, just one party may be sued.[12] *Bromberg & Ribstein, supra*

at 5:55. However, under joint liability, once all of the joint debtors are named in the suit and judgment is entered against them, the creditor may force any one of the debtors to pay all of the judgment.[13] This rule has long been recognized in South Carolina and in Indiana.[14]

We find it telling that in neither the Ohio nor the Indiana actions did Thompson ever argue that he was responsible only for a one-third share. The reason for the lack of argument is most likely attributable to the fact that, until the Ohio Supreme Court's decision, there was no authority for the proposition. Ohio's departure from recognized legal doctrine was noted in *CIT Group/Equipment Financing, Inc. v. New GIFL, Inc.* (1993) N.D. Ohio, 823 F.Supp. 479. There, the federal district court commends the reader to the Ohio Supreme Court's opinion in *Wayne Smith II* as a "novel partnership liability case." *Id.* at 485–86 (holding that Ohio's position on attorney fees is "at odds with much of the law on this subject nationwide").

### B. *Effect of Ohio's Holding*

Although the Ohio decision runs contra to the weight of authority, we would be bound to follow it if the doctrines of full faith and credit or *res judicata* applied.

Wayne Smith argues that *Wayne Smith II* could not be given full faith and credit be-

---

11. The Uniform Partnership Act (U.P.A.) imposes joint and several liability upon the partners for breaches of *trust, wrongful acts,* and *torts,* but imposes only joint liability for debts, obligations, and contracts. This is a codification of the common law. *Bromberg & Ribstein, supra* at 5:55. The U.P.A. gave no reason for preserving the common-law distinction, merely explaining that the distinction was only procedural. Official Comment, 6 U.L.A. 175 (1969). This position has been criticized by some commentators who recognize substantive consequences flowing from the different types of liability. *Bromberg & Ribstein, supra* at 5:55. For example, in joint liability, a release from one joint party extinguishes the liability of all other joint parties. Several states, including South Carolina, have departed from the U.P.A. and have imposed joint and several liability for all partnership obligations. *Id.* Although the U.P.A. stated that its distinction would not affect the Act's uniformity, one version of the revised U.P.A. would impose joint and several liability for all partnership obligations. U.P.A. § 306 (1991 revised proposed draft).

12. This dovetails with South Carolina's requirement that a partnership may be sued only by naming all of the partners and may not be sued in it's own name. *See supra* note 2.

13. At least one jurisdiction has stated that where all joint debtors have been named, served, and sued, there is no real distinction between joint liability and joint and several liability. *First Interstate Bank of Fargo, supra,* 475 N.W.2d at 544. *See supra* note 2.

14. "The individual partner is, however, not less liable for a firm debt than is the firm itself." *Blair, supra,* 9 S.E. at 1036. "The creditor of a firm is also a creditor of each partner to the full amount of his demand. . . ." *Wilson v. McConnell* (1857) 30 S.C.Eq. (9 Rich.Eq.) 500, 519. "The creditors of a [partnership] may collect their debts out of the property of *one* of its members . . ." *Dean v. Phillips* (1861) 17 Ind. 406, 409 (emphasis added).

cause it was not yet decided at the time of the Indiana decision. Wayne Smith further argues that even if *Wayne Smith II* should have been given full faith and credit, Thompson waived the argument by failing to raise it at trial. Thompson responds that he could not have made a full faith and credit argument at trial because *Wayne Smith II* was not yet in existence. We need not debate this legal conundrum, however, because our decision not to follow *Wayne Smith II* rests upon more fundamental principles of full faith and credit.

Pursuant to the Full Faith and Credit Clause of the United States Constitution, a foreign judgment is conclusive as to the merits of the action. *American Mut. Life Ins. Co. v. Mason* (1902) 159 Ind. 15, 64 N.E. 525. The determination of the amount due on a debt is a judgment upon the merits. *Weir v. Corbett* (1964) Cal.App., 229 Cal. App.2d 290, 40 Cal.Rptr. 161, 163. The South Carolina court determined that Wayne Smith was due $107,381.65, and that the partners were jointly liable for this amount. It is beyond the power of this or any other foreign court to add to or subtract from that judgment. If South Carolina limited joint debtors to a *pro rata* share, we would be bound by such a holding and only could allow Wayne Smith to satisfy one-third of the judgment from Thompson's individual assets. However, the facts are otherwise. *See Blair, supra,* 9 S.E. at 1036.

Although the Ohio Supreme Court has the power to determine the meaning of joint liability under Ohio law, it may not engraft this meaning onto a final judgment of a sister state. The Ohio decision is a definition of the legal term, "joint liability," which we are not bound to follow. Any requirements, procedures, or limitations which Ohio places upon creditors seeking execution in Ohio are not binding upon Indiana or any other state.[15] The Ohio decision, although bearing upon the amount due, is not a decision upon the merits of the South Carolina judgment, because only the South Carolina court had the authority to decide those merits.[16]

III.  *Standard of Review*

In reviewing a grant of summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Omni Micro, Inc., Hyundai Electronics America* (1991) 3d Dist., Ind.App., 571 N.E.2d 598, 600. There are no issues of material fact. The issues presented are pure questions of law. We hold that the trial judge correctly applied the law.

The judgment of the trial court is affirmed.

BARTEAU and BAKER, JJ., concur.

15. As is the case here, creditors must often pursue debtor assets in several states in order to satisfy a judgment. If the procedures of every state in which execution was sought attached to the judgment, a bizarre and unworkable situation would result. While the first state in which execution is attempted might require the creditor to whistle Dixie as a prerequisite to execution, the second state might require the creditor to stand on his head. Worse yet, a third state might require the creditor to have never whistled Dixie or stood on his head as a condition precedent to proceeding. Repetitive or perhaps contradictory procedural requirements would proliferate to no purpose.

16. If Wayne Smith were attempting to execute upon the Ohio judgment instead of the South Carolina judgment, our decision might be different.