FIRST DIVISION
Opinion filed December 3, 2010
Modified upon denial of rehearing January 18, 2011

No. 1-09-2079

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER V. LANGONE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 08 L 12209 |
| SCHAD, DIAMOND AND SHEDDEN, P.C.; | ) | |
| ANTHONY J. MADONIA AND ASSOCIATES; | ) | |
| and CHILDRESS, DUFFY AND GOLDBLATT, | ) | |
| LTD., | ) | The Honorable |
| | ) | Mary A. Mulhern, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford[1] concurred in the judgment and opinion.

**OPINION**

This case involves a dispute between law firms for the attempted recovery of attorney fees awarded as part of a class action settlement fund. Plaintiff, Christopher Langone, appeals from the trial court's order denying his motion pursuant to section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2008)), which sought the removal of "with

---

[1]Justice Sebastian Thomas Patti originally sat on the panel of this appeal and participated in its disposition. Justice Patti is no longer with the appellate court. Therefore, Justice Mary K. Rochford serves in his stead.

prejudice" language from a prior order dismissing plaintiff's breach of contract action against defendants and co-class counsel, Schad, Diamond & Shedden, P.C. (Schad), and Childress, Duffy & Goldblatt, LTD. (Childress).

FACTS

In January 1999, plaintiff's law firm, the Langone Law Firm, and the law firms of Schad, Childress,[2] and Anthony J. Madonia and Associates[3] (Madonia) entered into a contingent fee agreement with class members in a putative class action against Royal Macabees Life Insurance Company (Royal Macabees).  Relevant to this appeal, the terms of the agreement provided:

> "4. *** If a court determines that CLIENT'S [class representative James Miller] case should proceed as a class action, then the LAW FIRMS' [plaintiff's firm, Schad, Childress, and Madonia] fees *will be set by the court hearing the case.*
>
> ***
>
> 6. If they decide it is appropriate, and the client consents, the LAW FIRMS may, at their expense,

---

[2]At the time of contracting, Schad was known as Beeler, Schad & Diamond, P.C., and Childress was known as Childress & Zdeb, Ltd.

[3]Madonia was dismissed as a party to the instant appeal.

-2-

associate with other attorneys in the prosecution of CLIENT'S claim. CLIENT understands that as a result of the services rendered by LAW FIRMS, LAW FIRMS will share in the total fees paid on a pro rata basis according to the amount of time each has expended *or* as awarded by the Court hearing the case. The LAW FIRMS assume equal legal responsibility for the performance of legal services." (Emphasis added.)

In October 2000, class certification was granted and plaintiff's firm, Schad, Childress, and Madonia were named as co-class counsel. In August 2002, partial summary judgment was granted to the class. By December 2004, the class secured breach of contract liability against Royal Macabees and won summary judgment on the majority of Royal Macabees' affirmative defenses.

In 2005, a dispute arose in which there was a request for the removal of plaintiff and Childress as class counsel and a question as to which of the other firms should act as lead counsel. Class counsel agreed to mediate the dispute. Following mediation, an agreed order was entered in which Schad was appointed lead counsel and Schad and Childress were appointed trial counsel. No mention was made of plaintiff's removal as class counsel; however, the record contains an affidavit from James Shedden of the Schad law firm stating that the mediator

recommended plaintiff remain as cocounsel.

In January 2008, plaintiff filed a federal lawsuit alleging breach of fiduciary duty against co-class counsel[4] and seeking a declaration of the parties' respective rights and obligations under the contingent fee agreement.  Schad filed a motion to dismiss, contending plaintiff's claims were not ripe for adjudication.  The federal court dismissed plaintiff's suit without prejudice.

On January 11, 2008, the chancery court entered an order providing preliminary approval of a class action settlement agreement and providing the schedule for "Class Counsel's petition for attorneys' fees and for reimbursement of expenses." The settlement agreement provided for a $93 million settlement fund to satisfy the claims of the class members, as well as an insurance rate rollback valued at approximately $34,600,000.  In the subsequent notice of class action settlement, the court instructed class counsel to "petition the Court for an award of attorneys' fees, not to exceed one-third of the cash portion of the Settlement, including accrued interest.  Class Counsel will also seek reimbursement of the expenses incurred by them in this litigation.  No attorney fees will be paid or any expenses

---

[4]It is unclear from the record whether all three firms were named as defendants.

reimbursed except those approved by the Court."

Thereafter, Schad, Childress, and Madonia filed a joint fee petition seeking 33.3% of the settlement fund plus expenses. Plaintiff did not join in the fee petition. The chancery court requested detailed fee petitions from each law firm to ensure the reasonableness of the fee award. Specifically, on February 19, 2008, an order was entered instructing plaintiff to file a fee petition within 7 days and to exchange time records within 7 days. Schad, Childress, and Madonia complied with the request, submitting voluminous time records totaling 41,381 hours of time spent in connection with the litigation. Schad, Childress, and Madonia claimed that a lodestar multiplier of 1.6 was a reasonable fee.

Plaintiff filed an objection to the fee petition on behalf of himself and one class member arguing that the fees and expenses sought were excessive. Specifically, plaintiff argued that the time records submitted in support of cocounsel's fee petition were inflated and the attorneys were entitled only to 10% of the settlement fund instead of 33.3% in light of the size of the recovery in the case.

On April 4, 2008, the chancery court held a hearing for final approval of the class action settlement and to determine the issue of attorney fees. At the outset, plaintiff stated that he did not object to the approval of the settlement. The final

settlement was approved by the court.  Plaintiff, however, argued that he was not provided adequate notice with respect to the notice of class action settlement, in that the notice was sent to an old address.  The court overruled plaintiff's objection to lack of adequate notice.

Turning its attention to the issue of attorney fees, the court admonished plaintiff for failing to submit his time records per the court's request.  The following relevant exchange between the court and plaintiff ensued:

"MR. LANGONE: There has been a petition that has been filed that seeks one-third of the fund as award to Class counsel as a whole and there has been a petition that has been filed that says that the Court should award 10 percent of the fund to Class counsel as a whole.

And this Court made it clear for the record when the Court spoke on February 19th and said--and I'm quoting the Court--and please make clear--I will make clear for the record there will be one award of attorneys' fees to Class counsel.  And I think that the Court's intent in saying that was that the Court is not going to get involved in this dispute that exists as to how to divvy up the pie but just determine what size of it is going to be.  And if--you know, if the Court

wants to get into looking at all the lodestars of all four law firms, obviously that's --

THE COURT: I don't have yours.

MR. LANGONE: --within the Court's discretion.

THE COURT: I don't have yours. I don't have anything from you.

MR. LANGONE: Well, I submitted to them, and the Court never indicated that it was going to be making lodestar determinations.

THE COURT: Of course I did.

MR. LANGONE: The Court said we should exchange--

THE COURT: Of course I did. I said, and specifically to your colleague who was here on that day, that your own time should be filed if you were seeking fees. I specifically said that. You haven't done it.

MR. LANGONE: Well, your Honor, your Honor said that you were going to make one award of attorneys' fees to Class counsel.

THE COURT: Mr. Langone, I've read the transcript. I remember what I said.

MR. LANGONE: Well, I have it with me now.

THE COURT: I just read it.

MR. LANGONE: No, I have the time records with me.

THE COURT: I don't want them now.

MR. LANGONE: Okay. Well, I guess there's several issues with respect to the lodestar calculations, right? One is that I don't know what was submitted to the Court. I didn't know that the other lawyers' time had been submitted to the Court, and I did not--I mean, if they were--for instance, I don't know, did they submit Mr. Madonia's time records because I did not receive any indication that they've done that or Mr. Childress' time records or my own time records, if they're submitting all of the time records to the Court or are they just excluding mine, you know? It was not clear--

THE COURT: Nobody submitted your time records, Mr. Langone, and you know that. Don't be silly. I directed your colleague when you were here in February that if you had a petition to submit, you should submit it, and I gave you a date for that. You haven't done it.

MR. LANGONE: Okay. That was not clear to me.

THE COURT: I know you're not relying on the Schad firm to submit your fees. I know you aren't.

MR. LANGONE: Well, that was not totally clear to me. But, nonetheless, I was under the impression that

the Court was indicating that it wanted us to exchange time by a certain date, which we did, and we exchanged the time records, and we gave them copies of our time records.  And then I was under the impression the Court's making a fund determination and not breaking down the time records.

THE COURT: To the extent that you wanted your time included in the lodestar, it had to be submitted.  It's not included in the lodestar.  I am going to make one award of attorneys' fees, but it won't include any time that you spent because it's not included in the lodestar.

MR. LANGONE: Okay.  Well, your Honor, I mean, I don't want to talk about my time because I think this is more about what the Class fee should be.  I have-- whatever your Honor awards, I have my rights under the Lien Act and under my contract suits with them, and I assume your Honor is not adjudicating any of my separate rights and will make that clear because--

THE COURT: No

MR. LANGONE: No, you're not?

THE COURT: No, I'm not."

The court then provided plaintiff with an opportunity to support his objection to the fee petition submitted by Schad,

Childress, and Madonia. Defendants were provided an opportunity to respond in support of their fee petition. The court took the fee petition under advisement. Plaintiff informed the court that he had filed an attorney's lien in anticipation of the creation of the settlement "fund." Plaintiff also stated his intent to file his time records with the clerk's office.

On June 4, 2008, the chancery court issued a written order ultimately concluding that $25 million was "a reasonable and appropriate fee," amounting to 26.9% of the common settlement fund "with a risk multiplier on [an] adjusted lodestar multiplier of 2.2." The court denied the request for reimbursement of expenses as there was no documentation to support the expenses. In a footnote on the first page of the June 4, 2008, order, the court said that the "opinion [named] the individual law firms bringing the [fee] petition for clarification purposes"; however, the court would only make a single award.

The court calculated the attorney fees using the "percentage method" while cross-checking with the "lodestar method" to ensure reasonableness. In so doing, the court determined that Schad, Childress, and Madonia "significantly overstated" their lodestar because the hours billed were inflated and the lodestar failed to reflect a "reasonable time spent multiplied by a reasonable hourly rate." After thoroughly reviewing the time records, the court found that Schad, in particular, logged significantly

higher average billing hours while using multiple attorneys in nonessential manners from 2005-08, after the class had already secured breach of contract liability and had prevailed on summary judgment, resolving the majority of Royal Macabees' affirmative defenses. Therefore, the "billable hours, attorney representation, and strategy meetings increased in inverse proportion to the reduced [litigation] risk." Moreover, after reviewing Schad's time records, the court discovered that the Schad attorneys with the highest billable rates performed the vast majority of all of the work billed in connection with the Royal Macabees case, "a result inconsistent with an attorney's obligation to use associates and paralegals." The court noted that, while it was awarding one sum to account for attorney fees, "it [was] appropriate to analyze, for illustration purposes, individual law firms' billing submissions. In [that] respect, the [Schad] time records [were] significant because they [represented] roughly 75% of the total submitted hours."

On July 15, 2008, a hearing was held on plaintiff's petition to adjudicate an attorney's lien. The court concluded that plaintiff could not recover under the Attorneys Lien Act (770 ILCS 5/0.01 *et seq.* (West 2008)). In so ruling, the court said:

"I just don't see how it fits because the prerequisites for asserting the lien are the existence

of a client with a claim against somebody else who is put on notice, and that's not the factual situation here. Your client doesn't have a claim against your co-counsel. Your firm does. You and your firm do, but your client doesn't.

* * *

On the petition to adjudicate attorney's lien, the Court invited the Langone firm to submit a petition for fees along with the other fee petition submitted. This the Langone firm declined to do. It instead participated as an objector, arguing that the fund should be limited to 10 percent, without any significant analysis of the fees requested by Class counsel.

Now the Langone firm is in on a petition to adjudicate an attorney's lien, not against the settlement fund and not against Royal Macabees, but against the attorney's fees awarded by the Court from the settlement fund. The Attorney's Lien Act is a statutory provision that must be strictly construed, and as Mr. Langone has acknowledged, his client, [class member], has no claim against co-Class counsel. Rather, Mr. Langone is attempting to assert a claim that he and his firm potentially have against co-Class

counsel for fees.

This does not fall within the ambit of the Attorney's Lien Act. The only claim before the Court is the one asserted under the [A]ct. There is nothing before the Court under any other theory, nor would it appear appropriate that it would be before the Court.

And so because the only claim asserted is under the Attorney's Lien Act and the Court has found that under the circumstances the [A]ct does not apply, the motion to adjudicate attorney's lien is denied.

\* \* \*

What I am going to add to this order is this is a final and appealable order because the only thing remaining apart from the jurisdiction I retained over the administration of the settlement was this issue, and I have resolved it."

Plaintiff filed a notice of appeal on August 13, 2008, citing the trial court's July 15, 2008, final order and "all prior orders, including the order dated June 4th, 2008," awarding attorney fees and denying plaintiff's claim for an attorney's lien. According to plaintiff, his appeal was dismissed for want of prosecution. The dismissal order does not appear in the record before us.

On October 31, 2008, plaintiff filed a verified breach of contract complaint against Schad, Childress, and Madonia for failing to distribute plaintiff's *pro rata* share of the attorney fees awarded as a result of the class action settlement.[5]  On January 6, 2009, Schad and Madonia filed a joint motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2008)).  Specifically, Schad and Madonia argued that plaintiff's complaint was barred by a prior judgment, namely, the June 4, 2008, chancery court order, and that the breach of contract claim was barred by an affirmative matter avoiding the legal effect of or defeating that claim, namely, the language of the parties' contingency fee agreement.  See 735 ILCS 5/2-619(a)(4), (a)(9) (West 2008).  Childress joined in and adopted the section 2-619 motion filed by Schad and Madonia.  On February 13, 2009, plaintiff filed a motion for summary judgment (735 ILCS 5/2-1005 (West 2008)), contending that no genuine issue of material fact existed where

_____

[5]According to defendants, plaintiff simultaneously filed a lawsuit to recover attorney fees against the Royal Macabees class in federal court under the theory of *quantum meruit*.  The class moved for judgment on the pleadings, namely, the contingency fee agreement.  The motion was granted.  See *Langone v. Miller*, 631 F. Supp. 2d 1067 (N.D. Ill. 2009).

plaintiff's complaint had not been controverted by an answer, affidavit, or other pleading, and he was entitled to judgment as a matter of law.

On April 20, 2009, the trial court dismissed plaintiff's breach of contract complaint with prejudice. In response, on May 15, 2009, plaintiff filed a combined motion pursuant to section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2008)) to rehear, modify, and/or vacate the trial court's April 20, 2009, order, in order to remove the "with prejudice" language, and pursuant to section 2-616(a) of the Code (735 ILCS 5/2-616(a) (West 2008)) for leave to file an attached proposed amended complaint that more specifically pled the breach of contract count with additional facts, including a copy of plaintiff's time records, and added claims for breach of fiduciary duty and *quantum meriut*. Schad and Madonia filed a response in opposition to plaintiff's motion. Childress joined in the opposition motion. In his reply in support of his motion, plaintiff averred that the issue before the trial court was restricted to the section 2-1203 portion of the motion, *i.e.*, whether the court would "reconsider" withdrawing its dismissal of plaintiff's complaint with prejudice and instead dismiss the complaint without prejudice, so that his section 2-616(a) motion to amend could be considered on its merits.

On July 10, 2009, following a hearing, the court denied plaintiff's section 2-1203 motion. Plaintiff appeals the court's July 10, 2009, order.

DECISION

Plaintiff has a very narrow contention on appeal. Plaintiff contends the trial court erred in dismissing his first and only complaint with prejudice and, pursuant to section 2-1203 of the Code, the court should have modified its decision in order to allow plaintiff the opportunity to seek leave to amend. Plaintiff is clear that he does not challenge the dismissal of the complaint itself, only the fact that the complaint was dismissed with prejudice. At the July 10, 2009, hearing, plaintiff's counsel said:

"Judge, this is before the Court on the very limited question of the 1203 motion to modify that [April 20, 2009,] order to strike out the with prejudice provisions and to make it without prejudice and really nothing more. So that the interest of justice can be served by then allowing the plaintiff to present to Judge Ward the second half of the motion which is for leave to amend the complaint by filing the amended pleading that is attached to the motion.

* * *

So the ends of justice will be served here by this Court modifying its earlier order striking the with prejudice language to make it without prejudice and leave to Judge Ward to decide whether to allow the filing of the first amended complaint and that--the relief we ask for here today, the relief that Judge Ward has said this Court may consider it is very narrow, it's just to modify that earlier order so that the ends of justice can be considered at least by Judge Ward in his deciding whether the plaintiff gets leave to file his first, one and only amended pleading."

Section 2-1203 of the Code provides:

"(a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.

(b) A motion filed in apt time stays enforcement of the judgment ***."  735 ILCS 5/2-1203 (West 2008).

While addressing a section 2-1203 motion, this court has said:

"A motion to reconsider may be brought pursuant to section 2-1203 or 2-1401 of the Code.  [Citations.] The purpose of a motion to vacate under section 2-1203

-17-

is to alert the trial court to errors it has made and to afford an opportunity for their correction. [Citation.] Whether to grant or deny a motion to reconsider is within the sound discretion of the trial court. [Citation.] Whether a trial court has abused its discretion turns on whether the court's refusal to vacate ' "violates the moving party's right to fundamental justice and manifests an improper application of discretion." ' [Citation.] *In re Marriage of King*, 336 Ill. App. 3d 83, 87, 783 N.E.2d 115 (2002).

We first note that plaintiff's section 2-1203 motion did not suffer the same defect as the motion in *Shutkas Electric, Inc. v. Ford Motor Co.*, 366 Ill. App. 3d 76, 81, 851 N.E.2d 66 (2006). In *Shutkas Electric, Inc.*, the plaintiff filed a motion entitled "Motion to Modify Order Entered February 24, 2005 Pursuant to 735 ILCS 5/2-1203"; however, the body of the motion requested relief in the form of adding a party plaintiff and leave to file a second amended complaint. *Shutkas Electric, Inc.*, 366 Ill. App. 3d at 81. A motion is defined by its substance rather than its heading. *Shutkas Electric, Inc.*, 366 Ill. App. 3d at 81. Here, plaintiff's motion sought at least one form of relief listed in section 2-1203, namely, modification of the April 20, 2009,

judgment, and provided that the grounds for requesting the modification was for the consideration of a section 2-616(a) motion for leave to amend.  Plaintiff's motion, therefore, was unlike the motion in *Shutkas Electric, Inc.* even though it was a precursor to the motion for leave to amend, in that it was a motion directed against the April 20, 2009, judgment to the extent that it challenged the "with prejudice" language.  See *Shutkas Electric, Inc.*, 366 Ill. App. 3d at 81; compare *Vanderplow v. Krych*, 332 Ill. App. 3d 51, 58-59, 773 N.E.2d 40 (2002).  Accordingly, plaintiff's motion was a postjudgment motion under section 2-1203.

" 'The intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law.' "  *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24, 919 N.E.2d 383 (2009), quoting *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078, 872 N.E.2d 91 (2007).  We review whether the court erred in dismissing plaintiff's complaint.

A section 2-619 motion to dismiss admits the legal sufficiency of the pleading (*Valdovinos v. Tomita*, 394 Ill. App. 3d 4, 17, 914 N.E.2d 221 (2009)) and takes as true all well-pled facts and reasonable inferences drawn therefrom (*Purmal v. Robert*

*N. Wadington & Associates*, 354 Ill. App. 3d 715, 720, 820 N.E.2d 86 (2004)). We, therefore, must accept as true that plaintiff contributed over 1,041 hours to the Royal Macabees class action lawsuit; that class counsel entered a contract; that counsel for the class was awarded $25 million; and that plaintiff's *pro rata* share of the fee award was 3.2%. We, however, need not accept as true plaintiff's assertion that defendants breached their duty to compensate plaintiff for his *pro rata* share because that is a conclusion of law. *Purmal*, 354 Ill. App. 3d at 720 ("conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted"). In addition, we need not accept as true those facts plaintiff submits as support for his arguments that were included in his proposed amended complaint. The proposed amended complaint was not properly before the court when it denied plaintiff's motion to reconsider. As repeatedly advised by plaintiff, the proposed amended complaint was attached to the section 2-1203 motion merely for purposes of consideration with the section 2-616 motion.

I. Opportunity to Amend

Plaintiff contends the trial court abused its discretion in denying his request to modify the April 20, 2009, judgment deleting the with prejudice language, where public policy

supports the liberal granting of amendments. This argument combined with plaintiff's repeated statements that the only issue before the trial court and before us on appeal is whether the "with prejudice" language should have been removed leads us to conclude that plaintiff suggests his section 2-1203 motion should have been granted outright. We disagree. The law is clear that it is within the trial court's discretion whether to grant or deny a section 2-1203 motion. *In re Marriage of King*, 336 Ill. App. 3d at 87.

Moreover, plaintiff's complaint did not suffer from pleading defects; rather, pursuant to section 2-619 of the Code, plaintiff's complaint was considered sufficient and was dismissed because it was defeated by some other affirmative matter outside of the complaint. See 735 ILCS 5/2-619(a)(9) (West 2008). As a result, we find the cases that plaintiff primarily relies on to support his argument that amendments should be granted liberally are distinguishable.

In both *Droen v. Wechsler*, 271 Ill. App. 3d 332, 648 N.E.2d 981 (1995), and *Cantrell v. Wendling*, 249 Ill. App. 3d 1093, 620 N.E.2d 9 (1993), the appellate court found that the lower courts abused their discretion in denying motions to amend the underlying complaints in order to resolve pleading defects. *Droen*, 271 Ill. App. 3d at 335-36; *Cantrell*, 249 Ill. App. 3d at

1095-96. The *Cantrell* court concluded that the plaintiff had not been given ample opportunity to state a cause of action where it was not apparent that no amendment could cure defects in the pleading. *Cantrell*, 249 Ill. App. 3d at 1095-96. While it is true that the *Droen* court advised that the "circuit court should exercise its discretion liberally in favor of allowing amendments so that cases are decided on their merits and not on procedural technicalities," the "technicality" at issue there was whether the plaintiff was properly barred from amending her complaint when she did not attach a proposed amended complaint but included the substance of the proposed amendment in her motion. *Droen*, 271 Ill. App. 3d at 335-36. After reading *Droen* and *Cantrell*, we find them inapposite to the case before us where plaintiff's pleading was not dismissed because it failed to state a cause of action.

## II. *Res Judicata*

Despite plaintiff's repeated assertions that the substance of his complaint and the reasoning for the court's dismissal of the complaint are not at issue, plaintiff argues that his complaint should not have been dismissed on the basis of *res judicata* where defendants failed to, and cannot, establish the elements of the doctrine. We, therefore, must determine whether the trial court abused its discretion in dismissing plaintiff's

complaint with prejudice thereby denying plaintiff the opportunity to amend his complaint. In order to do so, we must consider whether plaintiff's complaint is capable of successful amendment. The court's April 20, 2009, written order does not provide the basis upon which the court dismissed plaintiff's complaint with prejudice; however, the transcript of the court's denial of the section 2-1203 motion does. In denying plaintiff's section 2-1203 motion, the trial court said:

"Well, the motion to reconsider today—or the motion for me to modify or vacate the judgment I entered on April 20 is one that the plaintiff—that issue was one that the plaintiff goes to some length in his reply to point out that that's all I have before me is whether or not under 2[-]1203 I should modify this judgment. And Judge Ward reserved to himself in the June 2 order whether or not the plaintiff would be given leave to amend if necessary, which obviously contemplates that if I don't grant the 1203 relief, then there is no reason to go to 2[-]616.

* * *

I have to say that I find it rather misleading, and I don't know if I should say disingenuous that at Page 2 of [plaintiff's] reply it is argued, one, two, three times that Langone was *pro se* in his proceedings.

-23-

That kind of misrepresents his status as a litigant. According to the entry in the Sullivan's directory Mr. Langone has been an attorney for over 18 years. So to describe him as a *pro se* in what appears to be an effort for some sympathy or latitude with regard to pleading or conduct of this lawsuit is incorrect and will be disregarded.

There's nothing in the motion or the reply that tells me that my decision that this action is barred on the basis of *res judicata* is incorrect. There's no case law that says its incorrect. This all revolves around whether or not Mr. Langone is going to get a share of the fees in a class action suit that was concluded a couple years ago. Mr. Langone has had ample opportunity to pursue his claiming for payment, and as a matter of fact, Judge Mason addressed that in her comments which are not only in *** the 1203 motion in response, but also in the motion made by the defendants that was granted on April 20. And so I don't think there's any reason for me to modify or vacate this order. I don't think the movant has made an adequate record that would warrant that, and so I think that's the end of this before it goes to the

Appellate Court."

The trial court, therefore, dismissed plaintiff's complaint on the basis of *res judicata*, finding that the chancery court's June 4, 2008, order awarding fees to class counsel and not plaintiff barred plaintiff's breach of contract claim.

*Res judicata* is an equitable principle intended to prevent multiple lawsuits between the same parties involving the same facts and issues. *Green v. Northwest Community Hospital*, 401 Ill. App. 3d 152, 154, 928 N.E.2d 550 (2010). *Res judicata* bars any subsequent actions when a final judgment was reached on the merits by a court of competent jurisdiction between their same parties or privies on the same cause of action. *Green*, 401 Ill. App. 3d at 154. "*Res judicata* is conclusive as to any matter that was offered to sustain or defeat the claim or demand, as well as any other matter that might have been offered for that purpose." *Dalan/Jupiter, Inc. v. Draper & Kramer, Inc.*, 372 Ill. App. 3d 362, 367, 865 N.E.2d 442 (2007). Therefore, the moving party must demonstrate (1) an identity of the parties or their privies in the two lawsuits; (2) an identity to the causes of action; and (3) a final judgment on the merits of the first lawsuit. *Dalan/Jupiter, Inc.*, 372 Ill. App. 3d at 367.

Plaintiff contends that defendants have not established and cannot establish the first requirement of the doctrine of *res*

*judicata*, *i.e.*, sameness of parties, because plaintiff was not a party to the Royal Macabees class action. In his initial brief, plaintiff, however, admits that "he was in privity with a party, the class representative, as their agent in the lawsuit and adverse to Royal Macabees."

For purposes of *res judicata*, the parties need not be identical to be considered the same. *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 786, 699 N.E.2d 1095 (1998). Litigants are considered the same when their interests are sufficiently similar, even if they differ in name or number. *Kapoor*, 298 Ill. App. 3d at 786. Litigants are privies when "a person is so identified in interest with another that he represents the same legal right." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 340-41, 826 N.E.2d 413 (2005).

We find that plaintiff and defendants were in privity with the Royal Macabees class action. Plaintiff and defendants represented the class and their interests were aligned such that all the attorneys sought a favorable outcome for their class members. Moreover, plaintiff and defendants were parties in interest in any action for attorney fees. See *Cantwell v. Reinhart*, 244 Ill. App. 3d 199, 204-05, 614 N.E.2d 174 (1993) (attorney in marriage dissolution proceedings was a party in interest in the cause of action for recovery of attorney fees and

dissolution order acted as bar for purposes of *res judicata* to attorney's subsequent action to recover attorney fees). Plaintiff and defendants were, therefore, in privity for purposes of *res judicata*.

Plaintiff contends that defendants have not demonstrated and cannot demonstrate an identity of the causes of action because plaintiff's contractual rights are distinct from the Royal Macabees class action.

To determine whether the causes of action are the same, we apply the "transactional test." *Valdovinos*, 394 Ill. App. 3d at 20. Under the "transactional test," "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883 (1998). Claims are "considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *River Park, Inc.*, 184 Ill. 2d at 311. The focus of the inquiry, therefore, is on whether the relief requested is based on substantially the same facts. *Jackson*, 356 Ill. App. 3d at 337.

We conclude that there was an identity to the causes of action between the July 15, 2008, order and plaintiff's breach of

contract complaint. In both instances, plaintiff relied on the same contractual language, namely, *pro rata* share, to contend that he was improperly frozen out of his share of the attorney fee award. In both instances, plaintiff argued that he provided a fee petition in the form of his objection to cocounsel's fee petition. Although the theories of relief differ, the operative facts are the same. Plaintiff is attempting to relitigate his right to a portion of the attorney fee award. This issue was decided by the chancery court and is thus barred by the doctrine of *res judicata.*

Plaintiff contends defendants have not demonstrated and cannot demonstrate that there was a final judgment on the merits in the prior proceeding because the chancery court's June 4, 2008, memorandum and order was not a final and appealable order where the court reserved jurisdiction to resolve additional matters and provided a future status date.

We agree that the court's June 4, 2008, memorandum and order was not a final adjudication on the merits because the court reserved jurisdiction to determine whether plaintiff's cocounsel were eligible for reimbursement of expenses. We, however, find that, for purposes of *res judicata*, there was a final adjudication on the merits of the attorney fee matter in the court's July 15, 2008, order. The chancery court dismissed

plaintiff's attorney lien claim and ordered the dispersal of the awarded fees to Schad, Childress, and Madonia, expressly stating that the order was final and appealable. The July 15, 2008, order does not appear in the record before us; therefore, we base our knowledge regarding that order on the transcript from that date.

To the extent plaintiff argues that a final order was only recently entered with the disbursement of the settlement fund, nothing appears in the record to support that argument. As the appellant, it was plaintiff's duty to provide an accurate and complete record. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984). In the absence of a sufficient record, we must resolve any doubts arising from the incompleteness of the record against the appellant and presume the trial court's order was in conformance with the law and supported by the evidence, or lack thereof. *Foutch*, 99 Ill. 2d at 392. We recognize that, in order for there to be an appeal from a final judgment of one or more but fewer than all parties, Supreme Court Rule 304(a) requires an express written finding that "there is no just reason for delaying enforcement or appeal." 155 Ill. 2d. R. 304(a); *Kral v. Fredhill Press Co.*, 304 Ill. App. 3d 988, 992, 709 N.E.2d 1268 (1999). We infer, based on the transcript appearing in the record in which the court provided that the order was final and

appealable, that the requisite Rule 304(a) language found in the transcript was also contained in the written order and *res judicata* does apply to the order. *Foutch*, 99 Ill. 2d at 392.

Plaintiff appealed the chancery court's July 15, 2008, order; however, the appeal was dismissed for want of prosecution on March 12, 2009. Plaintiff argues that the act of appealing the July 15, 2008, order prevents its finality for purposes of *res judicata*. Plaintiff is incorrect. "A final judgment can serve as the basis to apply the doctrines of *res judicata* and collateral estoppel even though the judgment is being appealed." *Illinois Founders Insurance Co. v. Guidish*, 248 Ill. App. 3d 116, 120, 618 N.E.2d 436 (1993); see *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1 (2009); *In re Estate of Barth*, 339 Ill. App. 3d 651 (2003).

We recognize there exists a split of authority on the question of whether an order is final for purposes of *res judicata* when an appeal is pending. Our supreme court continues to cite *Ballweg v. City of Springfield*, 114 Ill. 2d 107 (1986), for the proposition that "[f]or purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted." See *In re A.W.*, 231 Ill. 2d 92 (2008) (collateral estoppel). It is important to note that, in *Rogers v. Desiderio*, 58 F.3d 299 (7th Cir. 1995), the

Seventh Circuit recognized the split in authority and noted that *Ballweg* could be limited to issue preclusion (collateral estoppel) and not claim preclusion (*res judicata*). In addition, *Ballweg* relies on *Relph v. Board of Education of DePue Unit District No. 103*, 84 Ill. 2d 436 (1981), to support the proposition that an appeal bars the effects of *res judicata*; however, in *Relph*, the "appeals" at issue were not final judgments terminating litigation but, rather, were orders remanding the cause to the trial court and thus only stood as the law of the case at the time. *Relph*, 84 Ill. 2d at 442-43.

The split of authority is not relevant to our case because Langone's appeal *was not* pending when the breach of contract claim was pending. Plaintiff appealed the chancery court's July 15, 2008, order; however, the appeal was dismissed for want of prosecution. We take judicial notice that plaintiff's consolidated appeal was dismissed on March 12, 2009. Plaintiff's appeal, therefore, was no longer pending when the trial court dismissed plaintiff's breach of contract claim on April 20, 2009. Accordingly, plaintiff's appeal did not disturb the finality of the July 15, 2008, order.

In short, plaintiff has attempted several methods to recover attorney fees, all of which would have been unnecessary had he provided a detailed fee petition demonstrating his participation

in the Royal Macabees case. The notice of class action settlement advised plaintiff that he was required to file a fee petition. The transcripts in the record reveal that plaintiff failed to do so upon repeated request. The chancery court's June 4, 2008, order expressly excluded plaintiff from the calculation of attorney fees. While the chancery court did indicate that a joint fee award was to issue, the judge made clear that the joint award excluded plaintiff's firm. In its concluding remarks, the court advised plaintiff that "I made that award based on the petition I received, which included [Schad], Childress Duffy, and Madonia. It did not include yours, and I am not going to get into this battle now. I am not going to." Although a harsh result, we conclude the trial court did not abuse its discretion in denying plaintiff's motion to reconsider the dismissal of his breach of contract claim on the basis of *res judicata*.

III. Parties' Contract

As we have stated, the trial court dismissed plaintiff's complaint on the basis of *res judicata*; however, defendants' motion to dismiss also requested dismissal based on the parties' contingency fee agreement. This court may affirm the trial court's judgment on any basis appearing in the record. *Dalan/Jupiter, Inc.*, 372 Ill. App. 3d at 366. In the contingency fee agreement, the parties agreed that if a class action

proceeded the attorney fees would be "set by the court hearing the case." The agreement went on to provide that the attorneys would split any fee awarded *pro rata* "or as awarded by the Court hearing the case." Here, the court clearly decided that plaintiff was not going to be awarded any portion of the fees awarded because plaintiff failed to comply with the court's direct order to submit a detailed fee petition outlining the hours plaintiff worked on the case on a timely basis. Additionally, the court gave plaintiff an opportunity to support his objection to his cocounsel's joint fee petition; however, the record demonstrates that plaintiff failed to provide support for his claim that the attorneys, including himself, were entitled to 10% of the settlement fund.

Plaintiff cannot now request his *pro rata* share of a sum in which his contribution was not accounted for. Our review of the records at the time and shortly after plaintiff was ordered to submit his time records demonstrates that plaintiff did not have a record of his time in any cognizable format that could be submitted and checked for accuracy and reasonableness. Plaintiff's repeated argument that his fee petition took the form of his objection to cocounsel's joint fee petition and recommendation that the attorneys be awarded 10% of the settlement fund had absolutely no support. The transcripts from

the relevant time period demonstrate that plaintiff had no basis for claiming the attorneys were entitled only to 10% of the fund. Plaintiff agreed to let the court set the attorney fees.  Had plaintiff submitted the requisite fee petition, we agree that the trial court left it up to the attorneys themselves to determine the appropriate method for distributing the fees.  In that case, according to the contingency fee agreement, plaintiff would have been entitled to his *pro rata* share.  Plaintiff, however, cannot now draw from a fee award in which he was not considered.

CONCLUSION

We conclude that the trial court did not abuse its discretion in denying plaintiff's section 2-1203 motion to reconsider its dismissal of plaintiff's breach of contract complaint with prejudice.  We, therefore, affirm the judgment of the circuit court.

Affirmed.