# Illinois Official Reports

## Appellate Court

*Andrews v. Gonzalez*, 2014 IL App (1st) 140342

| | |
|---|---|
| Appellate Court Caption | WILLIAM T. ANDREWS, Plaintiff-Appellant, v. DAGOBERTO GONZALEZ, as Surviving Partner of G and G Cement Contractors, an Illinois Partnership, Defendant-Appellee (Century National Insurance Company, Defendant). |
| District & No. | First District, Second Division<br>Docket No. 1-14-0342 |
| Filed | September 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In plaintiff's action to recover an outstanding judgment he was awarded in a personal injury suit against a partnership of which defendant was the sole surviving partner, the trial court erred in dismissing plaintiff's action on the ground it was barred by *res judicata* because defendant was named a defendant in plaintiff's underlying action and was found not liable for negligence, since *res judicata* did not apply where the underlying suit sought to hold defendant vicariously liable for the injuries plaintiff suffered in a collision with a truck owned by defendant and being driven by an employee of the partnership and the instant action sought to hold defendant secondarily liable as a general partner for an unsatisfied judgment against the partnership. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-8116; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Beermann, Pritikin, Mirabelli, Swerdlove, LLP, of Chicago (Mark L. Evans, of counsel), for appellant.

Law Offices of Alan Barinholtz, P.C., of Chicago (William Melichar, of counsel), for appellee.

Panel

JUSTICE LIU delivered the judgment of the court, with opinion.
Justices Neville and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, William T. Andrews, filed suit against defendant, Dagoberto Gonzalez (Dagoberto), to recover an outstanding judgment awarded in a personal injury lawsuit against G&G Cement Contractors (G&G), a partnership of which Dagoberto was the sole surviving partner. The circuit court granted Dagoberto's motion to dismiss pursuant to section 2-619(a)(4) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(4) (West 2012)), finding that plaintiff's claim was barred by *res judicata* because Dagoberto was a named defendant in the prior underlying action and was found not liable for negligence. On appeal, plaintiff contends that the circuit court erred in dismissing his claim against Dagoberto because various provisions of the Uniform Partnership Act (1997) (Act) (805 ILCS 206/100 *et seq.* (West 2012)) and sections 2-410 and 2-411 of the Code (735 ILCS 5/2-410, 2-411 (West 2012)) demonstrate that *res judicata* does not bar a judgment creditor of a partnership from enforcing an outstanding judgment against a partner who was named individually in the underlying lawsuit. For the reasons that follow, we reverse the judgment of the circuit court of Cook County and remand the cause for further proceedings.

¶ 2    BACKGROUND

¶ 3    A. Personal Injury Lawsuit

¶ 4    On February 11, 2007, plaintiff was involved in an automobile accident with an employee of G&G, an Illinois general partnership owned by two brothers, Dagoberto and Jose Gonzalez, the latter of whom is now deceased. He subsequently filed suit against G&G, Dagoberto, the estate of Jose Gonzalez, and Luis Chavez, the driver of the vehicle, alleging negligence in the causing of the accident.[1] As pertinent here, Dagoberto was named as a defendant based solely on a theory of *respondeat superior*. In his third amended complaint, plaintiff alleged, *inter alia*, that Dagoberto owned the Ford truck driven by Chavez; that Dagoberto employed Chavez and allowed him to use the truck; that Dagoberto breached his duty to plaintiff through

_____

[1]Jose Gonzalez, Dagoberto's brother and the other partner of G&G, died during the pendency of the negligence action. John Grob, as special administrator of the estate of Jose Gonzalez, was substituted as the defendant in the suit.

the negligent acts of Chavez; and that as a direct and proximate result of this breach, Chavez drove the Ford truck into plaintiff's car, causing him serious injury.

¶ 5 Following a trial, the jury returned a verdict against G&G and Chavez, but in favor of Dagoberto and the estate of Jose Gonzalez. In its response to special interrogatories, the jury specifically found that, at the time of the accident, Chavez was an employee of G&G, but not of Dagoberto or Jose, individually. The jury ultimately awarded plaintiff $3,092,000 in damages and judgment was subsequently entered on the verdict. No posttrial motions were filed and no appeal was ever taken.

¶ 6                              B. The Instant Lawsuit and Bad-Faith Claims

¶ 7 At the time of the accident, G&G was insured under a business auto policy issued by Century National Insurance Company (CNIC). After trial, CNIC refused to pay its policy limit of $300,000 unless plaintiff would execute a full release of the entire judgment. Plaintiff filed citations to discover assets against both CNIC and Dagoberto. On April 25, 2013, the circuit court entered an agreed order requiring CNIC to pay the policy limit of $300,000 plus interest and costs. Thereafter, in May of 2013, the court also ordered Dagoberto to assign to plaintiff "all rights and choses of action that G&G has against CNIC." Dagoberto executed the assignment, "under protest," in both English and Spanish versions.

¶ 8 On July 17, 2013, plaintiff filed the instant action against CNIC and Dagoberto. Plaintiff brought various claims against CNIC for alleged bad faith in initially refusing to tender the policy limit on behalf of G&G, its insured. As pertinent here, plaintiff also sought to recover from Dagoberto, individually, the unsatisfied judgment amount he was awarded against G&G in the prior 2007 personal injury suit.

¶ 9 Dagoberto filed a motion to dismiss pursuant to section 2-619(a)(4) of the Code, asserting that plaintiff's claim was barred by the doctrine of *res judicata* because Dagoberto had already obtained a judgment in his favor in the personal injury lawsuit. He characterized plaintiff's new claim against him as merely "an attempt to get a second bite of the apple," noting that plaintiff previously, but unsuccessfully, sought to enforce the judgment against him in a supplementary proceeding.

¶ 10 Plaintiff responded by pointing out that sections 2-410 and 2-411 of the Code (735 ILCS 5/2-410, 2-411 (West 2012)), read together, create an exception to the *res judicata* doctrine. Specifically, he argued that sections 2-410 and 2-411 of the Code allow a separate action to enforce a partner's individual liability for a partnership obligation.

¶ 11 On January 13, 2014, the circuit court entered an order granting Dagoberto's motion to dismiss. The court agreed that plaintiff's claim was barred by *res judicata*, noting:

> "Here *** Dagoberto was named a defendant in the underlying action and a verdict was entered finding him not liable for the judgment. The Plaintiff did not appeal this verdict and filed a citation to discover assets. In that proceeding, the court limited the Plaintiff to an assignment of Dagoberto's chose in action against the insurance company. The Plaintiff cannot now seek to relitigate Dagoberto's liability and the claim against him *** is barred by *res judicata*."

¶ 12 The court included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay the enforcement or appeal of the lawsuit. We therefore have jurisdiction over this appeal.

¶ 13                                    ANALYSIS

¶ 14     On appeal, plaintiff contends that the circuit court erred in dismissing his claim against Dagoberto, which sought to recover the unsatisfied portion of the judgment against G&G, on the ground that it was barred by *res judicata*. He argues that sections 306 and 307 of the Act create a "secondary liability" for partners for the unsatisfied obligations of their partnerships. Further, he argues that sections 2-410 and 2-411 of the Code "expressly authorize a separate action to enforce a partnership obligation and provide the procedural means by which a separate judgment against the individual partner may be obtained." He asserts that, in light of this statutory scheme, this court should follow other jurisdictions and hold that *res judicata* does not bar a claim against a partner to enforce a partnership judgment where the partner was previously sued and found not liable for the underlying personal injury.

¶ 15     Dagoberto, meanwhile, responds that plaintiff is merely "attempt[ing] to re-litigate [his] liability in this second suit." He argues that plaintiff's claim is barred under the doctrine of *res judicata* because plaintiff had a prior opportunity to obtain a judgment against him for the partnership's obligation during the underlying personal injury action. He further maintains that neither the Act nor sections 2-410 and 2-411 of the Code create an exception to *res judicata*.

¶ 16     A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts affirmative matter that defeats the plaintiff's claim. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). We review *de novo* the circuit court's order granting a section 2-619 motion to dismiss. *Id.*

¶ 17     We begin by examining the statutory provisions at issue: namely, sections 306 and 307 of the Act and sections 2-410 and 2-411 of the Code. Our primary objective in interpreting a statute is to ascertain and give effect to the legislature's intent. *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23. The best indication of such intent is the language of the statute itself given its plain and ordinary meaning. *Id.* "Words and phrases should not be construed in isolation, but interpreted in light of other relevant portions of the statute so that, if possible, no term is rendered superfluous or meaningless." *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002). Ultimately, "we presume that the legislature, when it enacted the statute, did not intend absurdity, inconvenience, or injustice." *Id.*

¶ 18     Consistent with this approach, we choose to follow the doctrine of *in pari materia*, and agree that two legislative acts addressing the same subject should be considered together so that they may be given harmonious effect. *Citizens Opposing Pollution*, 2012 IL 111286, ¶ 24. "[Such] doctrine is also applicable to different sections of the same statute and is consonant with one of our fundamental rules of statutory construction–'to view all of the provisions of a statute as a whole.' " *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 185-86 (2006) (quoting *Land*, 202 Ill. 2d at 422).

¶ 19     Here, sections 306 and 307 of the Act and sections 2-410 and 2-411 of the Code can be read together as establishing a comprehensive procedure for obtaining and enforcing judgments against partnerships and their individual partners. Section 307(b) of the Act initially authorizes a plaintiff to bring "[a]n action *** against the partnership and *** any or all of the partners in the same action or in separate actions." 805 ILCS 206/307(b) (West 2012). In bringing an action against the partnership, the plaintiff may sue "in the names of the partners as individuals doing business as the partnership, or in the firm name, or both." 735 ILCS 5/2-411(a) (West 2012); see also 805 ILCS 206/307(a) (West 2012) ("A partnership may sue and be sued in the

- 4 -

name of the partnership."). Section 307(c) of the Act cautions, however, that "[a] judgment against a partnership is not by itself a judgment against a partner." 805 ILCS 206/307(c) (West 2012). The general rule is that all partners are jointly and severally liable for any obligation of the partnership. 805 ILCS 206/306(a) (West 2012). Insofar as the plaintiff seeks to recover from the partners, however, "[a] judgment against a partnership may not be satisfied from a partner's assets unless there is also a judgment against the partner." 805 ILCS 206/307(c) (West 2012).

¶ 20    The question presented here is what recourse is available when a plaintiff cannot satisfy a judgment against a partnership. Section 2-411(b) of the Code provides that "[a]n unsatisfied judgment against a partnership in its firm name does not bar an action to enforce the individual liability of any partner." 735 ILCS 5/2-411(b) (West 2012). Section 2-410 of the Code, entitled "Actions against joint debtors or partners," specifically provides for such an action, stating:

> "All parties to a joint obligation, including a partnership obligation, may be sued jointly, or separate actions may be brought against one or more of them. A judgment against fewer than all the parties to a joint or partnership obligation does not bar an action against those not included in the judgment or not sued." 735 ILCS 5/2-410 (West 2012).

Section 307(d) of the Act, meanwhile, limits the partner's individual liability for a partnership debt to certain circumstances. Specifically:

> "A judgment creditor of a partner may not levy execution against the assets of the partner to satisfy a judgment based on a claim against the partnership unless the partner is personally liable for the claim under Section 306 and:
>
> (1) a judgment based on the same claim has been obtained against the partnership and a writ of execution on the judgment has been returned unsatisfied in whole or in part;
>
> (2) the partnership is a debtor in bankruptcy;
>
> (3) the partner has agreed that the creditor need not exhaust partnership assets;
>
> (4) a court grants permission to the judgment creditor to levy execution against the assets of a partner based on a finding that partnership assets subject to execution are clearly insufficient to satisfy the judgment, that exhaustion of partnership assets is excessively burdensome, or that the grant of permission is an appropriate exercise of the court's equitable powers; or
>
> (5) liability is imposed on the partner by law or contract independent of the existence of the partnership." 805 ILCS 206/307(d) (West 2012).

¶ 21    The parties here interpret the foregoing provisions in fundamentally different ways. Plaintiff reads the foregoing provisions as creating two distinct types of liability: (1) "direct" liability, where a judgment is obtained based on a partner's "direct" liability in law or contract, independent of the existence of the partnership; and (2) "secondary" liability, where a "partnership obligation remains unsatisfied and *** the partnership assets have been exhausted." In the case of "direct" liability, plaintiff argues that a creditor of the partnership may immediately execute against the assets of a partner to satisfy a judgment against the partnership. 805 ILCS 206/307(d)(5) (West 2012). When it comes to "secondary" liability, however, plaintiff argues that a separate, subsequent action against an individual partner is required. The reason, he claims, is that a judgment against the partner may only be obtained

once the partnership assets have been exhausted. Plaintiff argues that sections 2-410 and 2-411 of the Code, which specifically authorize an action against an individual partner to enforce an unsatisfied judgment against a partnership, "operate as an exception to *res judicata*" in the case of secondary liability.

¶ 22 Dagoberto, on the other hand, reads the foregoing provisions slightly differently. Dagoberto maintains that there are two different ways by which a judgment can be obtained against a partner under section 306 of the Act: (1) a plaintiff can bring an action against both the individual partner and the partnership and obtain a judgment as to both; or (2) a plaintiff can bring suit against the partnership and obtain a judgment, then bring a second suit to hold the partner liable for the partnership's judgment. He argues that, in the case at bar, plaintiff chose the first method, failed to obtain a judgment against him, and is now "attempting to sue [him] a second time for the partnership obligation as though he had not been named in the first suit as directly liable or 'doing business as' G&G Cement Contractors."

¶ 23 Surprisingly, there appear to be no Illinois decisions that directly address the present issue, *i.e.*, whether a judgment creditor of a partnership may sue an individual partner to enforce the partnership's obligation when the partner was named in the underlying action and found not liable. Plaintiff has nonetheless cited three cases from foreign jurisdictions that he claims support the view that *res judicata* should not bar his claim against Dagoberto: *Wayne Smith Construction Co. v. Wolman, Duberstein & Thompson*, 604 N.E.2d 157 (Ohio 1992) (*Wayne Smith I*); *Thompson v. Wayne Smith Construction Co.*, 640 N.E.2d 408 (Ind. Ct. App. 1994) (*Wayne Smith II*); and *Travelers Insurance Co. v. St. Jude Hospital of Kenner, Louisiana, Inc.*, 37 F.3d 193 (5th Cir. 1994). These cases are not binding on this court; however, "comparable court decisions of other jurisdictions 'are persuasive authority and entitled to respect.' " *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 395 (2005) (quoting *In re Marriage of Raski*, 64 Ill. App. 3d 629, 633 (1978)). Given the lack of Illinois case law on point, we choose to examine the cited cases. See *id.*

¶ 24 *Wayne Smith I* and *Wayne Smith II* are collection actions arising out of the same breach of contract action in South Carolina. *Wayne Smith I*, 604 N.E.2d at 158; *Wayne Smith II*, 640 N.E.2d at 410. The common plaintiff in those cases obtained a judgment against a partnership and its individual partners in the amount of $107,381.65. *Wayne Smith I*, 604 N.E.2d at 158; *Wayne Smith II*, 640 N.E.2d at 410. The South Carolina appellate court, however, vacated the judgment against the individual partners, finding that the plaintiff had "contracted only with the partnership as an entity and not with the partners individually." *Wayne Smith I*, 604 N.E.2d at 158; *Wayne Smith II*, 640 N.E.2d at 410.

¶ 25 *Wayne Smith I* was an Ohio action brought by the plaintiff against the individual partners to collect the outstanding judgment against the partnership. *Wayne Smith I*, 604 N.E.2d at 159. The individual partners agreed in that case that the partnership's assets were insufficient to satisfy the outstanding judgment. *Id.* They maintained, however, that they were not personally liable for the outstanding judgment based on the South Carolina Court of Appeals opinion, which they alleged had overturned the judgment with respect to their liability. *Id.* The trial court ultimately ruled in favor of the plaintiff, and the individual partners appealed to the Supreme Court of Ohio. *Id.*

¶ 26 On appeal, the individual partners argued that *res judicata* barred the plaintiff from executing on their personal assets to satisfy the outstanding judgment against the partnership. *Id.* The Supreme Court of Ohio, looking to the South Carolina Court of Appeals' opinion,

initially found that the court used ambiguous language in referring to the liability of the partners "as individuals." *Id.* The court questioned:

"[D]id the South Carolina court determine that since the partners had not contracted in their individual capacities, [the plaintiff] could not obtain satisfaction of the entire debt from any one partner (*i.e.*, no several liability)? Or did that court hold that the partners' personal assets were not available to satisfy any portion of the outstanding debt (*i.e.*, no joint liability)?" *Id.* at 159-60.

¶ 27 The Supreme Court of Ohio resolved this question by looking to South Carolina law. The court noted that "South Carolina common law *** requires that a partnership judgment creditor first exhaust partnership assets before proceeding against the individual property of the partners." *Id.* at 160. The court explained that "[o]nly after satisfying this condition precedent may the judgment creditor then proceed against the property of the individual partners who, at the time of the South Carolina judgment rendered herein, would have been *jointly* liable for their proportionate share of the partnership debt." (Emphasis in original.) *Id.* The Supreme Court of Ohio ultimately determined that, in light of South Carolina case law and legislation, the South Carolina Court of Appeals "held that actions could not be maintained and judgments rendered against the individual partners upon the entire debt, thereby vacating the lower court's decision as to 'several' liability only." *Id.* It concluded that "[t]he partners' proportionate share of responsibility for the contractual debt of their partnership remains, leaving to [the plaintiff] the power of execution." *Id.*

¶ 28 *Wayne Smith II*, meanwhile, was a separate action brought by the plaintiff to collect the partnership debt from a single partner, Kenneth Thompson, who resided in the State of Indiana. *Wayne Smith II*, 640 N.E.2d at 410. The trial court in that case entered judgment against Thompson for the partnership's entire outstanding judgment. *Id.* Thompson then appealed, arguing that *res judicata* prevented Ohio and Indiana from reaching the partners' assets in light of the South Carolina Court of Appeals' decision vacating the judgment against the individual partners. *Id.* at 411. Thompson specifically claimed that "South Carolina conclusively established the lack of individual liability on the part of the partners." *Id.* The Indiana Court of Appeals noted, however, that Thompson's argument "presuppose[d] that the only way to reach a partner's individual assets is to show that the partner, in his individual capacity, entered into a separate contract with the creditor." *Id.* The court noted that in South Carolina and most other states that impose joint liability for partnership obligations, there are, in fact, two ways to establish the individual liability of a partner: (1) by proving a separate contract, and (2) by proving that partnership assets have been exhausted. *Id.* The court noted that there was a distinction in South Carolina law that "a partnership creditor must try to satisfy his judgment from partnership property before reaching individual property; whereas an individual creditor may attach any property the partner owns at any time." *Id.* The court found that "[b]y vacating the judgment against the individual partners, the South Carolina appellate court merely established that, at the time judgment was entered, [the plaintiff] was still a creditor of the partnership and not of each partner individually." *Id.* at 412. It ultimately concluded:

"The South Carolina decision established that neither of the two circumstances giving rise to individual liability existed. The existence of a separate contract would have to be raised in the original action, thus the court's finding on that issue is *res judicata* and binding upon this court through the Full Faith and Credit Clause. However, it is impossible for a creditor to prove that partnership assets have been

- 7 -

exhausted until a judgment had been procured against the partnership and returned unsatisfied. The court based its finding of non-liability upon separate-contract grounds. It did not state that both methods of proving individual liability had been foreclosed. Thompson concedes that the partnership assets have been exhausted. Accordingly, [the plaintiff] is now on the level of other unsecured creditors of all the individual partners." *Id.*

¶ 29 The final case cited by plaintiff comes from the United States Court of Appeals for the Fifth Circuit. In *Travelers Insurance Co.*, the plaintiff filed a multicount complaint against a partnership and its general partner, seeking, *inter alia*, a judgment against the partnership on a promissory note of which the plaintiff was the payee. *Travelers Insurance Co.*, 37 F.3d at 194. The plaintiff made no reference in its complaint to the general partner's "secondary liability for any judgment rendered against the Partnership," and a judgment was ultimately entered against the partnership alone. *Id.* The plaintiff attempted to collect the judgment from the partnership, but was unable to do so and filed a second suit against the general partner. *Id.* The parties both moved for summary judgment, and the general partner asserted that the plaintiff's claim was barred by *res judicata*. *Id.* at 194-95. The general partner argued that "because it was a defendant in the Partnership Litigation, [the plaintiff] was required to assert all claims against it in that litigation, including any for secondary liability on a judgment against the Partnership." *Id.* at 195. The district court, however, granted summary judgment to the plaintiff. *Id.*

¶ 30 On appeal, the Fifth Circuit noted that federal *res judicata* rules applied and that the only factor at issue was "whether both cases involve[d] the same cause of action." *Id.* Applying a transactional test to address this factor, the court turned to its prior decision in *Federal Deposit Insurance Corp. v. Mmahat*, 960 F.2d 1325 (5th Cir. 1992), which "held implicitly that, under Louisiana law, a judgment creditor's claim against a partner for his virile share of a judgment against the partnership does not arise out of the same nucleus of operative facts as the partnership's debt." *Travelers Insurance Co.*, 37 F.3d at 196. While the court observed that the general partner was a party in the underlying litigation, unlike the partner in *Mmahat*, it found this to be "a distinction without a difference." *Id.* Specifically, it found:

> "[B]ecause we are dealing with the transactional test aspect (fourth factor), [the general partner's] presence in the Partnership Litigation is immaterial in determining whether this action *** is barred. The issue, in its simplest terms, is whether [the plaintiff's] claim against [the general partner] in this action arises from the same nucleus of operative facts as in the Partnership Litigation. As stated, pursuant to the holding in *Mmahat*, it does not." *Id.* at 196-97.

¶ 31 The case at bar is similar to the preceding cases in that plaintiff is seeking to collect an outstanding judgment against a partnership from an individual partner despite the fact that the individual partner was named in the underlying lawsuit. It is further similar in that the individual partner, Dagoberto, claims that such an action is barred by *res judicata*. We find, similar to *Travelers Insurance Co.*, that *res judicata* does not bar plaintiff's claims in this case.

¶ 32 "*Res judicata* is an equitable principle intended to prevent multiple lawsuits between the same parties involving the same facts and issues." *Langone v. Schad, Diamond & Shedden, P.C.*, 406 Ill. App. 3d 820, 832 (2010). "*Res judicata* bars any subsequent actions when a final judgment was reached on the merits by a court of competent jurisdiction between their same parties or privies on the same cause of action." *Id.* " '*Res judicata* is conclusive as to any matter

that was offered to sustain or defeat the claim or demand, as well as any other matter that might have been offered for that purpose.' " *Id.* (quoting *Dalan/Jupiter, Inc. v. Draper & Kramer, Inc.*, 372 Ill. App. 3d 362, 367 (2007)). "Therefore, the moving party must demonstrate (1) an identity of the parties or their privies in the two lawsuits; (2) an identity to the causes of action; and (3) a final judgment on the merits of the first lawsuit." *Id.*

¶ 33     In this case, as in *Travelers Insurance Co.*, the only factor at issue between the parties is whether there is an identity to the causes of action in the instant lawsuit and the previous litigation. We apply a transactional test to make this determination. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310 (1998). Under this test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 311.

¶ 34     Here, plaintiff's third amended complaint filed in the previous litigation alleged that Dagoberto was negligent for the car accident which led to his injuries. The instant complaint, on the other hand, seeks to recover from Dagoberto, individually, an unsatisfied judgment against G&G, the firm of which Dagoberto was a partner. There is no question that these two cases arise from different groups of operative facts: the prior litigation arose from a car accident involving an employee of G&G; the latter arose out of the failure of G&G to satisfy its partnership debts. We therefore find that *res judicata* does not bar plaintiff from bringing a second action against Dagoberto to enforce the obligations of the partnership.[2]

¶ 35     We agree with plaintiff, and the court in *Wayne Smith II*, that there are two distinct ways of establishing the liability of an individual partner: (1) through "direct" liability by showing that an individual partner was liable, personally or vicariously, for an injury "independent of the existence of the partnership"; and (2) through "secondary" liability by showing that the individual partner is liable for an unsatisfied judgment against the partnership. Today, we hold that plaintiff is not barred from seeking to establish Dagoberto's *secondary* liability, through his status as a general partner of G&G, for an unsatisfied judgment against the partnership merely because plaintiff has previously sought to hold him *vicariously* liable for the underlying negligence caused by an employee of the partnership.

¶ 36     In reaching our conclusion, we have considered the text of sections 306 and 307 of the Act and sections 2-410 and 2-411 of the Code and find nothing to suggest that a plaintiff is barred from maintaining separate actions against an individual partner for his direct and secondary liability. On the contrary, we find that sections 2-410 and 2-411(b) of the Code broadly authorize creditors of partnerships to bring suit against individual partners to collect on unsatisfied judgments of the partnership. See 735 ILCS 5/2-410, 2-411(b) (West 2012).

¶ 37     Dagoberto argues that this court's holding would lead to absurd and unfair results because it would "allow a second suit for the same obligation." His argument fails. This is not a situation in which a claimant seeks two bites at "the" apple; instead, this situation involves *two* separate and distinct apples. As indicated above, our holding does not allow a second suit for the same obligation; rather, it allows separate suits for separate obligations, *i.e.*, one suit to determine Dagoberto's liability–under *respondeat superior*–for *an employee's negligence*, and

---

[2]We note that plaintiff's filing of a citation to discover assets against Dagoberto was not an "action" under section 2-411(b) of the Code. *Johnson v. St. Therese Medical Center*, 296 Ill. App. 3d 341, 347 (1998).

another suit to determine Dagoberto's liability–as a general partner of G&G–for the *partnership's unsatisfied judgments*. We therefore find Dagoberto's claim to be without merit and conclude that the circuit court erred in dismissing plaintiff's claim against Dagoberto on the grounds of *res judicata*.

¶ 38                                    CONCLUSION

¶ 39       For the reasons stated, we reverse the order of the circuit court and remand the cause for further proceedings.

¶ 40       Reversed and remanded.